UNITED STATES, Appellant.

v.

Lawrence JOHNSON, Airman First Class U.S. Air Force, Appellee.

No. 53,926.
ACM 24626.

U.S. Court of Military Appeals.

Jan. 12, 1987.

**210**

For Appellee: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellant: *Lieutenant Colonel Robert E. Giovagnoni* (argued); *Colonel Kenneth R. Rengert* (on brief).

*Opinion of the Court*

PER CURIAM:

Contrary to his pleas, the accused was convicted by a general court-martial composed of members of various offenses, including unlawfully entering the dwelling house of Paul A. Ferrette at Misawa-shi, Japan, with intent to commit larceny therein, and larceny of a Dynamic Range Expander, worth $250.00, which belonged to Ferrette, in violation of Articles 130 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 930 and 921, respectively. The sentence adjudged was a bad-conduct discharge, confinement for 18 months, forfeiture of $400.00 pay per month for 18 months, and reduction to airman basic. The convening authority approved the findings and sentence; but, sitting *en banc*, the Court of Military Review held, by divided vote (5–3), that the findings of guilty of housebreaking and larceny should be set aside and those charges dismissed; that the remaining findings of guilty were proper; and that a rehearing on sentence could take place with respect to those approved findings. *United States v. Johnson*, 21 M.J. 553 (1985).

Subsequently, the Judge Advocate General of the Air Force certified these two issues:

I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW, IN REVIEWING THE DECISION OF A BASE COMMANDER WHO ISSUED A SEARCH AUTHORIZATION, ERRED, IN FAILING TO PROPERLY APPLY THE STANDARD OF REVIEW ENUNCIATED BY THE SUPREME COURT IN *ILLINOIS V. GATES*, 462 U.S. 213, 103 S.CT. 2317, 76 L.ED.2D 527 (1983).

II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN EXCLUDING EVIDENCE, WHICH WAS SEIZED PURSUANT TO A SEARCH, CARRIED OUT IN GOOD FAITH, BASED ON A FACIALLY VALID SEARCH AUTHORIZATION, IN LIGHT OF THE DECISION OF THE SUPREME COURT IN *UNITED STATES V. LEON*, 468 U.S. [897], 104 S.CT. 3405, 82 L.ED.2D 677 (1984).

I

The pertinent facts were summarized by Senior Judge Canellos in this manner:

On or about 10 February 1984, someone broke into the off-base apartment of an Air Force member and stole a stereo expander therefrom. The next day, at work, the victim was discussing the theft and the fact that she was going to report it to the security police so they could take fingerprints from the scene. In the midst of this conversation, the accused, who was a co-worker, made a statement questioning why someone would steal a stereo expander and yet not steal a large screen television set that was co-located with it. This seemed curious to the victim since the accused had never been inside her house and ostensibly did not know that she had such a T.V. In addition, the accused stated that it would do no good to take fingerprints since the security police did not have his fingerprints on file. These statements, coupled with the fact that she believed that the theft was probably perpetrated by someone in her office, and the fact that the accused had been a half hour late re-

turning from his lunch on that date, caused the victim to suspect the accused. The victim did not report these suspicions to the security police until 28 February 1984. The next day [29 Feb], March 1, 1984, she was interviewed by them. She provided all the above information as well as the fact that, although the accused lived in the barracks on base, he also lived with a U.S. Army member off-base [in Japan], in the same general area as the victim.

On 1 March 1984, the security police investigator briefed the staff judge advocate as to the above information, and inquired whether there was sufficient probable cause to issue an authorization to search the accused's barracks room, car, and the home of the Army member. The staff judge advocate opined it was a close case but he believed there was sufficient probable cause to support these authorizations to search. He recommended that rather than searching immediately, it would be wise to await the return of the Army member, who was absent from the installation, and secure her permission to search.

The security police waited; however, on 6 March 1984, one day before the Army member was to return, they became suspicious that the accused was aware of their investigation and thought he might hide the stereo expander and therefore moved to search immediately. An authorization to search the accused's barracks room was secured from his unit commander. Another authorization to search the Army member's home was secured from the base commander. The base commander had been fully briefed by the staff judge advocate on all the known facts surrounding the theft and the accused's probable involvement. The commander also knew the accused had a previous court-martial conviction for larceny, and his base exchange privileges had been revoked as a result.

A search of the barracks room was negative. When the security police arrived at the off-base quarters to effectuate a search there, they saw the accused exit carrying an over-sized gym bag, large enough to conceal the missing stereo equipment. When the accused observed the security police, he put the bag back into the house, closed the door and departed in his car. He was followed and apprehended as he was about to enter the installation. He was put in a detention facility, searched, and ordered to relinquish the key to the off-base quarters.

*United States v. Johnson,* 21 M.J. at 554–55.

The majority of the court below stated that

assuming *arguendo,* that there was sufficient information presented to the commander to support the search authorization for alternative locations, we find that the information was stale. [Citations omitted.] As a result of our finding that the information was stale, we find the authorization to search was not based on probable cause. [Citation omitted.]

*Id.* at 555.

## II

██ Under Article 66(c) of the Uniform Code, 10 U.S.C. § 866(c), the Courts of Military Review have been granted factfinding power. When this power is exercised in a manner favorable to the accused, we are bound thereby. However, despite the terminology used in Judge Canellos' opinion, it appears to us that the question before the Court of Military Review was one of law, rather than fact—namely, whether a reasonable person in the position of the commander could have concluded from the information given him that probable cause existed to believe that the object of the proposed search was currently located in the place to be searched. If there had been a question about whether certain information had actually been presented to the commander, then this would be an issue of fact for the military judge to decide and later would be subject to the factfinding power of the Court of Military Review. However, nothing in the record indicates that there was any dispute as to the information received by the commander. Like-

wise, there is no claim that false information was intentionally presented to him by investigators. *Cf. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Such a claim would also present a factual issue for decision by the military judge and would be subject to factual review.*

With respect to staleness of the information to justify probable cause, there is no dispute about the length of time which passed between occurrence of the events on which probable cause was based and the commander's authorization for the search. Once again the issue to be decided is legal rather than factual. Of course, the court below could not transmute a conclusion of law about staleness into a factual finding by the language it employed.

■ Using "the totality-of-the-circumstances analysis" authorized by *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); and *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), we are satisfied that the evidence made available to the commander who authorized the search was sufficient to constitute probable cause for believing that Johnson had stolen the stereo expander. The accused, who had been previously convicted of larceny, had an opportunity to enter the victim's house covertly and steal the stereo expander; and, after the theft came to light, he made two incriminating comments.

■ Unlike drugs, which may be located in several places at the same time, the stereo expander could only be in one place at one time. Thus, it could not be simultaneously in the accused's room at the barracks, in his automobile, and in his off-base residence. We conclude, however, that it suffices if the commander authorizing the search has probable cause to believe that the property being sought will be found in one of the several identified areas which are under the suspect's direct control.

Thus, the evidence here was adequate, even though it left open the possibility that the stereo expander was in the off-base residence, rather than in the barracks room; and *vice versa.*

■ Insofar as the timeliness of the information is concerned, we agree with Judge Carparelli's dissent that it is important to consider the nature of the property which was the subject of the proposed search. If the property sought is a controlled substance, apparently intended for use or distribution, then it probably would not remain in a suspect's possession over a long period of time. Similarly, we do not dispute the conclusion reached in *United States v. Bright,* 2 M.J. 663 (A.F.C.M.R. 1976), that a pistol, which "was relatively light in weight, readily portable, concealable, and located in a highly mobile conveyance—an automobile," *id* at 665, would probably have been moved during the 2 or 3 weeks between the sighting of the pistol and the authorization of the search. However, the stereo expander was much bulkier than a pistol and could not be as readily transported or hidden. It was the type of property which someone in the accused's age bracket would probably steal for recreational use and retain. Moreover, it was an item which would probably have been less readily marketable than some other types of property would be. Thus, the probability was much greater that it would still be in the suspect's possession.

### III

Since we conclude that probable cause existed for the search, we need not answer the second certified question, which concerns the scope of the "good faith" exception.

The decision of the United States Air Force Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for further review in accordance with this decision.

---

* In searches which the Government seeks to justify under the "good faith" exception, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)—an exception recently given explicit recognition in revised Mil.R.Evid. 311(b)(3), Manual for Courts-Martial, United States, 1984—a factual issue would be presented as to the subjective "good faith" of the person performing the search.