UNITED STATES

v.

**Airman First Class Kenneth A. SHARROCK, FR 462–39–6045, United States Air Force.**

**ACM 27897.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 May 1989.

Decided 9 May 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major George P. Clark.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain James C. Sinwell.      .

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

LEONARD, Judge:

In this case, we are faced with two issues. The first is whether the appellant was unlawfully ordered into pretrial confinement by his commander. Second, if the appellant was unlawfully confined, should the evidence found on his person when he entered confinement and the evidence derived therefrom be suppressed? We find the initiation of appellant's pretrial confinement to be unlawful and find the military judge erred in failing to suppress the evidence derived therefrom. In order to resolve these issues, we need to set forth what brought the appellant to the confinement facility door.

With the exception of a drunk driving Article 15, UCMJ, punishment in April of 1986, appellant's military career was progressing well until the summer of 1988. He had a number of outstanding performance reports and he was well regarded by his supervisors and his commander. Unfortunately, marital difficulties began to distract him in the summer of 1988. His wife had left him and taken their small son with her to another state. Appellant went on leave in July 1988 to try to patch things up and spend as much time as possible with his son. When things did not go as he expected, he asked for and received a leave extension. At the end of this extension, he remained absent without leave for five days before voluntarily returning to his duty station on 15 August 1988. He was offered and accepted Article 15, UCMJ, punishment for this offense. However, from that point on, appellant's heart was no longer in his work and he began experiencing minor difficulties with the Air Force.

By December 1988, he had received another Article 15, UCMJ, punishment for a failure to go to his place of duty and his unit was ready to process him for administrative separation. In early January 1989, appellant's first sergeant informed him of the pending separation and told him it would take about four to six weeks to complete the processing. However, when the appellant inquired as to the status of his separation in mid February, his first sergeant told him it would still take another four to six weeks.    ·

At this point, appellant became impatient and decided that he no longer cared to wait for his discharge. On 23 February, he went to the base exchange and cashed four checks for a total amount of $1121.12 to buy presents and finance his planned departure. The checks were drawn on a closed account. After thinking the matter over a bit more, appellant concluded that going AWOL would not solve his problems, but would only make them worse and probably ultimately cause a longer separation from his son. On 24 February, he went to his first sergeant and told him that he had planned to go AWOL, but had changed his mind because it would only make matters worse. He also told the first sergeant he had a drug problem and he needed help with that and his depression over his marital problems.

On 3 March 1989, appellant's bad checks were returned to the base exchange. The exchange contacted appellant's first sergeant and the Office of Special Investigations (OSI). The first sergeant informed appellant his checks had been returned. On 6 March 1989, appellant returned the merchandise he had purchased with the checks and some of the money he had obtained. In all, he returned money and merchandise worth $1104.00 and promised to return the remainder due as soon as possible. On 9 March 1989, OSI agents

interviewed appellant about the checks and he provided a complete written confession.

On 23 March 1989, appellant's first sergeant directed him to report to the Office of the Staff Judge Advocate. When he did so, he was met by his commander who preferred a court-martial charge against him for violations of Article 123a, UCMJ, 10 U.S.C. § 923a. Immediately after the charge was preferred, appellant's commander ordered him into pretrial confinement and appellant was taken to the confinement facility by security police personnel who were standing by for that purpose.

When appellant was being processed for confinement, his personal possessions were taken from him and inventoried. During that inventory, it was discovered that appellant had in his possession a small gold spoon and approximately 0.15 grams of methamphetamine. Based on appellant's possession of the methamphetamine and the spoon, the base commander authorized a seizure of a specimen of appellant's urine for drug testing. The specimen tested positive for marijuana and methamphetamine.

At the time appellant's commander ordered him into pretrial confinement, the commander was aware of appellant's prior record and all the circumstances surrounding his bad checks and the aborted decision to go AWOL. The commander also knew two other airman from his unit had recently gone AWOL while they were pending courts-martial. According to his testimony, he ordered appellant into pretrial confinement because he had a "gut feeling" that he would flee. He based this feeling on the fact appellant had previously gone AWOL; that he was no longer able to work at the normal duties he enjoyed as a jet engine mechanic; that he had expressed a strong desire to be with his son as soon as possible; that he had previously contemplated AWOL; that, with preferral of court-martial charges, his case was likely to drag on for another two or three months; and the bad experiences he had with the other two airmen who had gone AWOL. He stated that the most important factor was appellant's previous AWOL. The commander also stated he briefly considered other forms of restraint; but, based on his experience with the other airmen, he didn't feel that any lesser form of restraint could prevent an AWOL.

On cross-examination, the commander admitted that he had no current indications that appellant would flee. He further admitted that the most current indications were to the contrary in that appellant had returned voluntarily from his previous AWOL, had told the first sergeant and OSI agents of his aborted decision to go AWOL, had fully confessed to his crimes, had sought help, and had expressed a desire to see things through to conclusion. He further admitted that appellant's response when informed of the court-martial charges was unemotional and gave no indication of an intent to flee. He finally admitted, that his bottom line was a belief that appellant would at least consider AWOL as an alternative coupled with the fact that two other airmen in the squadron had gone AWOL and he did not want to take any chances.

■ After hearing all the evidence on the issue, the military judge entered findings of fact and denied appellant's motion to suppress the evidence derived from appellant's entry into pretrial confinement. A military judge's findings of fact made when ruling on a motion, should not be overturned unless they are clearly erroneous. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985). Although the military judge included some conclusions of law within his findings of fact, the facts that he did find were very similar to the facts we have recited above, and we find that his findings of fact were not clearly erroneous.

■ In determining whether the military judge applied the proper legal standards and in assessing the correctness of his ruling as a matter of law, we must address two conflicting concerns. First, the determination of a military judge of an issue of admissibility of evidence or the decision of a commander or magistrate to place or continue an accused in pretrial confinement should not be overturned unless they constitute an abuse of discretion. *United States v. Jenkins*, 27 M.J. 209 (C.M. A.1988); *United States v. Rolfe*, 24 M.J.

756 (A.F.C.M.R.1987). Second, "unless confinement prior to trial is compelled by a legitimate and pressing social need sufficient to overwhelm the individual's right to freedom ... the right to be free must be paramount." *United States v. Heard,* 3 M.J. 14 (C.M.A.1977).

▇▇▇ R.C.M. 305 provides the bases for pretrial confinement in the armed forces. This rule was developed from the premise that no person should be confined unnecessarily and attempts to strike a balance between individual liberty and the protection of society. MCM, App. 21, Rule 305, A21–14.2 (1984). The rule provides that:

> No person may be ordered into confinement except for probable cause. Probable cause to order pretrial confinement exists when there is a reasonable belief that:
>
> (1) An offense triable by court-martial has been committed;
>
> (2) The person confined committed it; and
>
> (3) Confinement is *required* by the circumstances.

R.C.M. 305(d), (emphasis added).

In determining whether confinement is required, the Discussion accompanying R.C.M. 305(d) refers to the provisions of R.C.M. 305(h)(2)(B) which provides that confinement may be necessary when it is foreseeable that:

> (a) The prisoner will not appear at a trial, pretrial hearing, or investigation, or
>
> (b) The prisoner will engage in serious criminal misconduct; and
>
> (iv) Less severe forms of restraint are inadequate.

We do not believe the information available to appellant's commander supported a reasonable belief that pretrial confinement was "required" by the circumstances of appellant's case. His testimony showed that he had no current indications from appellant that would support a belief that appellant would not be present for trial. He admitted that the most recent indications from appellant would support a conclusion that he had decided to stay and face his punishment. The commander stated that the most important factor he considered was appellant's previous history of AWOL. However, he admitted he gave little weight to the specific facts of appellant's one previous AWOL. The facts showed that AWOL had occurred six months prior to the decision to confine, had been caused by an attempt to resolve a martial dispute, had lasted for only five days, and had ended with appellant returning voluntarily. The commander also had a "gut feeling" that the appellant would consider AWOL "a very viable alternative." This "gut feeling" was based on the commander's belief of how appellant would react to charges being preferred, continued duties outside his career field, and a longer absence from his son. However, the commander admitted that his beliefs were not supported by any concrete indications from appellant that he would flee. Further, when appellant was informed of the charges, there was no indication that he was upset. Finally, the commander was concerned about the two other airmen from his unit that had gone AWOL when faced with court-martial charges and he did not want to "take any chances" with appellant.

▇▇▇ The military judge concluded that the AWOLs of the two other airmen was a legitimate factor for the commander to consider in determining whether appellant should be confined. We disagree. A commander may certainly rely upon his experience as a commander in dealing with individuals facing court-martial charges; however, he may not deprive a person of his liberty because two other individuals facing completely unrelated charges went AWOL and he no longer wants "to take any chances." All the factors to be considered by a commander or magistrate in imposing or continuing pretrial confinement are to be particularized to the individual to be confined. R.C.M. 305(h)(2)(B), Discussion.

We also disagree with the military judge's conclusion that appellant's commander had probable cause to believe that, once the court-martial charge was preferred, appellant would absent himself without authority and not be present for

further legal proceedings with respect to his case. To the contrary, we find that the preponderance of the available evidence did not support a determination on "reasonable grounds" that pretrial confinement was required to insure appellant's presence at trial or to prevent him from engaging in further serious criminal misconduct. *United States v. Lavalla*, 24 M.J. 593 (A.F.C.M. R.1987); R.C.M. 305(h)(2)(B); R.C.M. 305(i)(3)(C). Because of this lack of "reasonable grounds" to support a requirement for pretrial confinement, we disagree with the military judge's determination that appellant's pretrial confinement was lawful. R.C.M. 305(h)(2)(B)(iii). We find that appellant's commander abused his discretion in ordering appellant into pretrial confinement and the resulting pretrial confinement was unlawful. *Heard*, 3 M.J. at 22; R.C.M. 305(j).

■ Further, even if appellant's commander had "reasonable grounds" to determine that appellant would not appear at trial, his determination to place appellant into pretrial confinement would still be defective for failure to consider less severe forms of restraint. It was obvious that he dismissed any consideration of less severe forms of restraint because of preconceived beliefs that they could not work with anyone. However, this is not the proper standard for determining lesser forms of restraint are "inadequate." The "ultimate device of pretrial incarceration" is to be used only "when lesser forms of restriction or conditions on release have been tried and have been found wanting." *Heard*, 3 M.J. at 21; R.C.M. 305(h)(2)(B), Discussion.

■ Having found appellant's pretrial confinement unlawful, we will now address the problem of whether the evidence gained from appellant's entry into pretrial confinement should have been suppressed. The government asserts that a good faith exception should apply and the contested evidence would be admissible under this exception.

The good faith exception was enunciated by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the court held that the Fourth Amendment exclusionary rule should not be applied to exclude evidence seized by police officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate that was later found to be invalid. Military Rule of Evidence 311(b)(3) incorporated the good faith exception into military law. The good faith exception has also been applied to evidence derived from arrests or apprehensions based on warrants or authorizations that are subsequently determined to be defective. *United States v. Mahoney*, 712 F.2d 956 (5th Cir.1983); Mil. R.Evid. 311(b)(3)(A).

We decline to apply the good faith exception to the facts of this case. First, the drafters of the rule made it clear that the exception would apply to search or seizure authorizations issued by commanders who were "neutral and detached." MCM, App. 22, Rule 311, A22–17 (1984). Appellant's commander was neither neutral nor detached with respect to the decision to place appellant into pretrial confinement. He had preferred the court martial charge and had been previously involved in imposing Article 15, UCMJ, punishment on appellant and in deciding to take administrative separation action against appellant. Further, the evidence is clear that his decision was heavily influenced by his prior experiences with other airmen in his unit who had gone AWOL while facing court-martial charges. The reason for a military magistrate review of a commander's pretrial confinement decision is to subject that decision to review by a neutral and detached official to insure the prisoner will be "less likely to suffer from the whim and caprice of heavy-handed authority." *Lavalla*, 24 M.J. at 595; MCM, App. 21, Rule 305, A21–16 (1984). Further, despite Mil.R.Evid. 311(b)(3), the application of the good faith exception to any search, seizure or apprehension authorization issued by a commander is still unsettled. *See, United States v. Morris*, 28 M.J. 8 (C.M.A.1989); *United States v. Queen*, 26 M.J. 136 (C.M. A.1988).

Second, we also note the exception has never been applied to evidence obtained

pursuant to a placement in unlawful pretrial confinement. The rule and the drafter's comments indicate that it is to be applied to an "authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R.Evid. 315(d)." Mil.R.Evid. 311(b)(3)(A). A seizure of personal effects incident to entry into unlawful pretrial confinement does not fit into any of the categories covered by the rule.

In the absence of a good faith exception, evidence gained from the search or seizure of appellant's personal effects incident to entry into unlawful pretrial confinement would be an unreasonable seizure under the Fourth Amendment. *United States v. Klis*, 42 C.M.R. 738 (A.C.M.R.1970); Mil.R. Evid. 314(a) and (g)(1). Further, evidence derived from the evidence taken during the unlawful seizure would also be inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Kozak*, 12 M.J. 389 (C.M. A.1982); Mil.R.Evid. 311(e)(2). Therefore, we find that the military judge erred in denying appellant's motion to suppress the methamphetamine and paraphernalia found in his personal effects upon entry into pretrial confinement and the results of the urinalysis derived from the seizure of these items.

The suppression of this evidence requires us to reverse appellant's conviction on three of the four offenses charged against him and order a rehearing on sentence. *United States v. Peoples*, 29 M.J. 426 (C.M. A.1990). The determination that appellant's pretrial confinement was unlawful also requires that appellant be granted credit under R.C.M. 305(k).

The findings of guilty of the Specification and the Additional Charge and Specifications 1 and 2 and the Second Additional Charge are set aside and these charges are dismissed. The remaining findings of guilty are affirmed. The sentence is set aside and a rehearing on sentence may be held. Any subsequent action taken following a rehearing on sentence in this case should take into account that appellant is

entitled to an additional credit for 69 days of unlawful pretrial confinement.

Senior Judge FORAY and Judge MURDOCK concur.