UNITED STATES, Appellant,

v.

Kenneth A. SHARROCK, Airman First Class, U.S. Air Force, Appellee.

No. 64,891.
ACM 27897.

U.S. Court of Military Appeals.

Argued Dec. 18, 1990.

Decided May 20, 1991.

For the Accused: *Major George P. Clark (argued); Major Ronald G. Morgan* (on brief).

For the United States: *Captain James C. Sinwell (argued); Colonel Robert E. Giovagnoni and Major Paul H. Blackwell, Jr.* (on brief).

*Opinion*

SULLIVAN, Chief Judge:

On May 31, 1989, the accused was tried by a military judge sitting alone as a general court-martial at Norton Air Force Base, California. Consistent with his conditional pleas, he was found guilty of wrongful possession of methamphetamine, as well as wrongful use of marijuana and of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Consistent with his unconditional pleas, he was convicted of uttering four bad checks, in violation of Article 123a, UCMJ, 10 USC § 923a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $300.00 pay per month for 12 months, and reduction to airman basic. The convening authority approved the sentence. The Court of Military Review dismissed the three drug offenses and ordered a rehearing on sentence as to the bad-check offenses, with credit to be given for 69 days of unlawful pretrial confinement. 30 MJ 1003, 1008 (1990).

The Judge Advocate General of the Air Force, pursuant to Article 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989), requested review of the following questions:

## I

WHETHER THE COURT OF REVIEW ERRED BY HOLDING THAT APPELLEE'S COMMANDER ABUSED HIS DISCRETION IN ORDERING APPELLEE INTO PRETRIAL CONFINEMENT?

## II

WHETHER THE COURT OF REVIEW ERRED BY HOLDING THAT APPELLEE'S PRETRIAL CONFINEMENT WAS UNLAWFUL, AND IF UNLAWFUL, WHETHER THE GOOD FAITH EXCEPTION SHOULD APPLY?

## III

WHETHER RULE FOR COURTS–MARTIAL 305(k) IS THE EXCLUSIVE REMEDY FOR UNLAWFUL PRETRIAL CONFINEMENT?

For different reasons, the judges of this Court have concluded that the court below erred in reversing the military judge's denial of the defense motion to suppress evidence obtained in a search of the accused after he was allegedly unlawfully confined. Accordingly, we remand this case to the Court of Military Review for further review. *Cf. United States v. Heard*, 3 MJ 14, 22 n. 20 (CMA 1977). *See also United States v. Johnson*, 23 MJ 209 (CMA 1987).

The Court of Military Review summarized the facts which it relied upon in reversing the military judge's denial of the suppression motion. These were the same facts upon which the accused's commander ordered confinement, the military magistrate continued confinement, and the military judge ruled such confinement was lawful. Judge Leonard said:

With the exception of a drunk driving Article 15, UCMJ, punishment in April of 1986, appellant's military career was progressing well until the summer of 1988. He had a number of outstanding performance reports and he was well regarded by his supervisors and his commander. Unfortunately, marital difficulties began to distract him in the summer of 1988. His wife had left him and taken their small son with her to another state. Appellant went on leave in July 1988 to try to patch things up and spend as much time as possible with his son. When things did not go as he expected, he asked for and received a leave extension. At the end of this extension, he remained absent without leave for five days before voluntarily returning to his duty station on 15 August 1988. He was offered and accepted Article 15, UCMJ, punishment for this offense. However, from that point on, appellant's heart was no longer in his work and he began experiencing minor difficulties with the Air Force.

By December 1988, he had received another Article 15, UCMJ, punishment for a failure to go to his place of duty and his unit was ready to process him for administrative separation. In early January 1989, appellant's first sergeant informed him of the pending separation and told him it would take about four to six weeks to complete the processing. However, when the appellant inquired as to the status of his separation in mid February, his first sergeant told him it would still take another four to six weeks.

At this point, appellant became impatient and decided that he no longer cared to wait for his discharge. On 23 February, he went to the base exchange and cashed four checks for a total amount of $1121.12 to buy presents and finance his planned departure. The checks were drawn on a closed account. After thinking the matter over a bit more, appellant concluded that going AWOL would not solve his problems, but would only make them worse and probably ultimately cause a longer separation from his son. On 24 February, he went to his first sergeant and told him that he had planned to go AWOL, but had changed his mind because it would only make matters worse. He also told the first sergeant he had a drug problem and he needed help with that and his depression over his marital problems.

On 3 March 1989, appellant's bad checks were returned to the base exchange. The exchange contacted appellant's first sergeant and the Office of Special Investigations (OSI). The first sergeant informed appellant his checks had been returned. On 6 March 1989, appellant returned the merchandise he had purchased with the checks and some of the money he had obtained. In all, he returned money and merchandise worth $1104.00 and promised to return the remainder due as soon as possible. On 9 March 1989, OSI agents interviewed appellant about the checks and he provided a complete written confession.

On 23 March 1989, appellant's first sergeant directed him to report to the Office of the Staff Judge Advocate. When he did so, he was met by his commander who preferred a court-martial charge against him for violations of Article 123a, UCMJ, 10 USC § 923a. *Immediately after the charge was preferred, appellant's commander ordered him into pretrial confinement and appellant was taken to the confinement facility by security police personnel who were standing by for that purpose.*

*When appellant was being processed for confinement, his personal possessions were taken from him and inventoried. During that inventory, it was discovered that appellant had in his possession a small gold spoon and approximately 0.15 grams of methamphetamine. Based on appellant's possession of the methamphetamine and the spoon, the base commander authorized a seizure of a specimen of appellant's urine for drug testing. The specimen tested positive for marijuana and methamphetamine.*

At the time appellant's commander ordered him into pretrial confinement, the commander was aware of appellant's prior record and all the circumstances surrounding his bad checks and the aborted decision to go AWOL. The commander also knew two other airmen from his unit had recently gone AWOL while they were pending courts-martial. According to his testimony, he ordered appellant into pretrial confinement because he had a "gut feeling" that he would flee. He based this feeling on the fact appellant had previously gone AWOL; that he was no longer able to work at the normal duties he enjoyed as a jet engine mechanic; that he had expressed a strong desire to be with his son as soon as possible; that he had previously contemplated AWOL; that, with preferral of court-martial charges, his case was likely to drag on for another two or three months; and the bad experiences he had with the other two airmen who had gone AWOL. He stated that the most important factor was appellant's previous AWOL. The commander also stated he briefly considered other forms of restraint; but, based on his experience with the other airmen, he didn't feel that any lesser form of restraint could prevent an AWOL.

On cross-examination, the commander admitted that he had no current indications that appellant would flee. He further admitted that the most current indications were to the contrary in that appellant had returned voluntarily from his previous AWOL, had told the first sergeant and OSI agents of his aborted decision to go AWOL, had fully confessed to his crimes, had sought help, and had expressed a desire to see things through to conclusion. He further admitted that appellant's response when informed of the court-martial charges was unemotional and gave no indication of an intent to flee. He finally admitted, that his bottom line was a belief that appellant would at least consider AWOL as an alternative coupled with the fact that two other airmen in the squadron had gone AWOL and he did not want to take any chances.

30 MJ at 1004–05 (emphasis added).

The military judge made specific findings supporting his denial of the defense motion to suppress. The record states the following relevant findings:

10. The accused's Commander, Major Haylett, ordered the accused into pretrial confinement after determining that probable cause existed to believe a crime had been committed and that the accused had committed the crime. The commander then determined that confinement was required by the circumstances. In doing so, he considered that lesser forms of restraint were not enough since the primary reason for ordering the accused into pretrial confinement was to ensure the accused's presence at trial.

11. Major Haylett's conclusion that pretrial confinement was necessary in order to ensure the accused's presence at trial was based on a number of factors. First, Major Haylett knew of the accused's five-day AWOL in August 1988, knew the accused went AWOL to spend more time with his son, and considered this previous absence the most important factor in his decision to order the accused into pretrial confinement.

12. Major Haylett knew, in part from the discussions he had with the accused, that the accused was very concerned and anxious about when he would be reunited with his son. Major Haylett believed that the accused's concern and anxiety would worsen dramatically when the accused learned that, instead of being administratively discharged in a few weeks, he would be court-martialed on the Article 123a, UCMJ charge, and thus his separation from the Air Force would be delayed by many months.

13. Major Haylett was aware of the accused's 9 March 1989 admission to OSI that he was getting supplies and money in anticipation of going AWOL when he wrote the four nonsufficient funds checks on 23 February 1989; and that the accused had decided not to absent himself at that time.

14. Major Haylett knew that the accused was no longer allowed to perform his normal duties as a jet engine mechanic. Major Haylett believed the accused, who had enjoyed his normal duties and was very good at them, would be unhappy performing other, menial tasks, and thus would be more likely to absent himself.

15. Major Haylett had, within the four months prior to 23 March 1989, two other members of his squadron absent themselves while pending court-martial action.

16. Based on the matters before him, the Commander believed that the accused would not be available for trial. He considered the unhappy professional and personal situation of the accused, the doubt about how the accused would react to emotional frustrations, given the accused's strong desire to be reunited with his son, the past record of absences when confronted with stressful situations, and recent debate by the accused about absenting himself, and the preparations made in contemplation of such, and the potential impact on the accused when formally informed of the preferral of charges. The fact that a period of time elapsed since the accused was notified by the Squadron First Sergeant that checks had been returned and the accused admitted contemplating absenting himself does not invalidate the reasonable belief by the Commander on 23 March 1989, when charges were preferred, that the accused would ultimately be unavailable for trial if the accused was not placed in pretrial confinement. The fact that two other airmen in the same squadron had absented themselves when faced with the preferral of charges was a legitimate factor for the Commander to consider, which he did, when determining that the pretrial confinement of the accused was necessary.

Therefore,

Major Haylett had probable cause to believe offenses triable by a court-martial, specifically, violations of Article 123a of the Uniform Code of Military Justice, had been committed.

Major Haylett had probable cause to believe the accused had committed the offenses.

Major Haylett had probable cause to believe that once the Article 123a charge was preferred, the accused would absent

himself without authority and not appear for further legal proceedings pertaining to the charge unless he was placed in pretrial confinement.

Major Haylett's decision to place the accused in pretrial confinement was not an abuse of discretion.

The accused's initial entry into pretrial confinement the morning of 23 March 1989 was lawful; therefore,

The evidence derived from the accused's initial entry into pretrial confinement, that is, the .15 grams of powder containing methamphetamine, the small gold spoon, and the urinalysis results obtained from an authorized search are admissible in evidence.

Any questions on the ruling on the motion?

TC: No, Your Honor.

DC: No, Your Honor.

MJ: Captain Aakhus, do you have any further motions to be made at this time?

DC: Well, yes, Your Honor. I have assumed that your ruling on this is clear, but just for the record, together with the motion or the issue that's been raised concerning the appropriateness of pretrial confinement, I guess, goes along with that and would be a motion for appropriate relief in terms of granting the accused additional credit for the time that he spent in pretrial confinement.

I would assume, based on your decision and your findings that that motion is denied. I just wanted to say that—

MJ: Well, it wouldn't be right at this time to make a motion on pretrial confinement credit since we don't have a find-

ing as to the guilt or innocence of the accused. If there is a finding of guilty—

DC: And a sentence to confinement.

MJ: At the time of sentencing, you may surely renew the motion for additional pretrial confinement credit and I'll be receptive to hearing your position and arguments at that time. I don't think it's the right motion at this point.

DC: Thank you, Your Honor.

The defense has nothing further.

---

The question of the lawfulness of an accused's pretrial confinement may be raised in a number of ways before a military judge at a court-martial. First, if an accused is still confined at the time of trial, he may seek his release from the unlawful confinement by means of a pretrial motion for appropriate relief. *See* RCM 305(j)(1) and 906(b)(8), Manual for Courts–Martial, United States, 1984; *United States v. Palmiter*, 20 MJ 90, 97 n. 12 (CMA 1985); *Courtney v. Williams*, 1 MJ 267, 268 (CMA 1976). Second, if an accused has been released at the time of trial, he may seek credit against his sentence for any served unlawful confinement by means of a sentencing motion for appropriate relief. *See* RCM 305(j)(2) and (k); *United States v. Heard, supra* at 15. Third, if evidence is seized from his person as a result of his unlawful confinement, an accused may seek to suppress admission of this evidence at his court-martial under RCM 905(b)(3) and Mil.R.Evid. 311(c)(1), Manual, *supra.*[1] *See also* Mil.R.Evid. 313(c) and 314(h). *See generally Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22

---

1. Mil.R.Evid. 311 states:
   (a) *General Rule.* Evidence obtained as a result of an *unlawful search or seizure* made by a person acting in a governmental capacity is inadmissible against the accused....

   \* \* \* \* \* \*

   (c) *Nature of search or seizure. A search or seizure is "unlawful"* if it was conducted, instigated, or participated in by:
   (1) *Military personnel.* Military personnel or their agents and was *in violation of the*

*Constitution of the United States as applied to members of the armed forces,* an Act of Congress applicable to trials by court-martial that requires exclusion of *evidence obtained in violation thereof, or Mil.R.Evid. 312–317;* ...

(Emphasis added.) The language of this Presidential rule does not limit its application to cases where only erroneous probable-cause determinations or Fourth Amendment issues are raised. *See generally* 2 W. LaFave, *Search and Seizure* § 5.3(d) at 509 (2d ed. 1987).

L.Ed.2d 676 (1969); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Court of Military Review, of course, may be called upon to review a military judge's ruling on any of the above motions. *See* Art. 66(c), UCMJ, 10 USC § 866(c). It has factfinding powers with respect to factual issues which may arise as a result of these motions. *See United States v. Hernandez*, 4 USCMA 465, 468, 16 CMR 39, 42 (1954). However, if it accepts the judge's findings of fact, it, like this Court, is limited to deciding questions of law. *See generally United States v. Burris*, 21 MJ 140 (CMA 1985). In view of the acceptance of the judge's findings of fact by the court below in this case, I conclude its disagreement with the judge was solely one of law. *See United States v. Wilcher*, 4 USCMA 215, 217, 15 CMR 215, 217 (1954). *See generally United States v. Johnson, supra.*

A preliminary problem in this case arises from the somewhat imprecise terminology employed in the first certified issue. The question asked is whether the Court of Military Review erred in finding that the "commander abused his discretion in ordering ... pretrial confinement." Admittedly, the Court of Military Review did make such a statement in its opinion. 30 MJ at 1007. However, that court more particularly held that the accused's pretrial confinement as ordered by his commander was unlawful for three different reasons. RCM 305(d); *cf. Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972).

First, it stated that the commander improperly considered the unauthorized absences of two other soldiers in the accused's squadron as a basis for confining him. 30 MJ at 1006. Second, it held that no other reasonable grounds were presented to the commander to support his confinement decision in this case. Finally, it

implied that the commander legally erred when he failed to test lesser forms of restraint prior to issuing the confinement order. *Id.* at 1007. Accordingly, setting aside the Court of Military Review decision with regard to the suppression issue is warranted if all three of their reasons were legally incorrect. Art. 67(c).

My first inquiry is whether it was improper for the commander to consider the recent unauthorized absences of two other soldiers in the accused's unit who also had been facing courts-martial. I note that this was one of many factors which the commander considered in his confinement decision. Moreover, it was relevant to this decision to the extent it reflects a circumstance surrounding the accused which might influence his decision to appear at a court-martial. *See generally* RCM 305(h)(2)(B), Discussion. Finally, consideration of these absences clearly was not outcome-determinative in light of the accused's own recent unauthorized absences. *See* Art. 59(a), UCMJ, 10 USC § 859(a). I agree with the court below that individual consideration of an accused's situation is contemplated by RCM 305(h)(2)(B). However, I do not agree that incidental consideration of his squadron members' absences violated this Manual provision and invalidated the commander's confinement order in this case.

My second question is whether some reasonable grounds for the accused's pretrial confinement (*i.e.*, probable cause and necessary circumstances) existed in this case based on other information presented to the commander.[2] *See generally United States v. Heard*, 3 MJ at 22 n.20. The record shows that the commander was aware of recent unauthorized absences by the accused; his planning at one time to leave to avoid this court-martial; his removal from normal duties to menial tasks while awaiting trial; the possibility of con-

---

**2.** The position of some Federal Courts of Appeals in reviewing suppression-motion denials by district courts involving probable-cause determinations for arrest varies. *United States v. Reis*, 906 F.2d 284, 288 (7th Cir.1990) (de novo);

*cf. Laing v. United States*, 891 F.2d 683, 685 (8th Cir.1989) (clearly erroneous). *See generally United States v. McConney*, 728 F.2d 1195, 1199–1205 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

tinued absences from his son, his major concern; and the probability of discharge from the military. Admittedly, the Court of Military Review itself largely discounted these circumstances in view of the accused's recently professed change of heart. Nevertheless, I cannot hold as a matter of law that a reasonable and prudent person was required to place such great weight on the accused's most recent words and actions. *See generally Draper v. United States*, 358 U.S. 307, 314, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). Moreover, I cannot realistically say that no substantial grounds existed in this case to confine the accused. *See generally Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *cf. United States v. Heard, supra* at 22 n. 20. Accordingly, I conclude as a matter of law that the information presented to the commander was sufficient to justify the accused's pretrial confinement. *See United States v. Johnson, supra.*[3]

The final question to be addressed is whether the commander committed legal error by failing to try lesser forms of restraint prior to ordering pretrial confinement. RCM 305(d), of course, applies to the initial command decision to confine and requires no such action by the commander. RCM 305(h)(2)(B), which applies to the commander's subsequent decision to continue confinement, also does not require such action. The discussion to that Manual provision does mention lesser forms of restraints but only for purposes of consideration. *Cf. United States v. Heard*, 3 MJ at 22 n. 20. Such consideration was clearly given by the commander in this case, and I find no legal error in his rejection of these forms of restraint.

For the reasons noted above, I answer the first certified question in the affirmative. For different reasons my brother judges agree that the Court of Military

Review erred in reversing the judge's decision denying the defense suppression motion.[4] They also agree that the findings of guilty set aside by the court below must be reinstated. In addition, however, my two Brothers hold that the Court of Military Review properly found that the accused's pretrial confinement was unlawful and that appropriate sentence credit is required. Accordingly, the court below should reinstate the dismissed findings of guilty, reassess the sentence, and award a credit of 69 days on this sentence.

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for further review.

EVERETT, Senior Judge (concurring in part and dissenting in part):

The Manual for Courts–Martial describes the circumstances under which a commanding officer may order a servicemember into pretrial confinement. RCM 305, Manual for Courts–Martial, United States, 1984. Under this rule, which "was developed from the premise that no person should be confined unnecessarily and attempts to strike a balance between individual liberty and the protection of society,"[1] a servicemember may not be ordered into confinement unless "there is a reasonable belief that: (1) [a]n offense triable by court-martial has been committed; (2) [t]he person confined committed it; and (3) [c]onfinement is required by the circumstances." RCM 305(d).

■ The military judge apparently came to the conclusion that Sharrock's commander had satisfied these requirements when he placed the accused in confinement. The

---

**3.** I reach this same result applying any of the standards of review noted in footnote 2.

**4.** Assuming Issues II and III need be reached in this case, I agree with Senior Judge Everett's conclusion that the Court of Military Review's decision could be reversed on the basis of the "good faith" exception to the exclusionary rule.

*See* Mil.R.Evid. 311(b)(3)(C); *United States v. Morris*, 28 MJ 8, 19 (CMA 1989) (Sullivan, J., concurring in part and in the result).

**1.** *See* 30 MJ 1003, 1006 (1990); Drafters' Analysis, Manual for Courts–Martial, United States, 1984 at A21–14.2 (Change 3).

Court of Military Review, after detailed consideration and discussion, reached a different result. In my view, this was within its powers under Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c). Moreover, I fully agree with the court below that, although "[a] commander may certainly rely upon his experience as a commander in dealing with individuals facing court-martial charges ... he may not deprive a person of his liberty because two other individuals facing completely unrelated charges went AWOL and he no longer wants 'to take any chances.'" 30 MJ 1003, 1006 (1990).

■ Having determined that the accused should not have been placed in pretrial confinement by his commanding officer, the Court of Military Review properly directed that Sharrock should receive a credit on his sentence for the time spent in pretrial confinement. However, I disagree with its conclusion that he also was entitled to suppression of the evidence obtained when his personal possessions were inventoried incident to his being confined.

■ Usually evidence is admissible when obtained during a routine inventory of the personal effects of someone who is being placed in confinement. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). This principle may not apply when no probable cause exists to believe that the person being confined has committed a crime; but, in my view, the exclusionary rule may not be invoked merely because a commanding officer has erred in determining that "[c]onfinement is required by the circumstances." *See* RCM 305(d)(3).

In this connection, I rely on the rationale of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where the majority explained that the exclusionary rule is designed primarily to deter police misconduct, rather than errors on the part of magistrates. Although a commanding officer cannot be equated to a magistrate,

*United States v. Stuckey*, 10 MJ 347, 361 (CMA 1981), he—like a magistrate—must be "neutral and impartial" in performing some of his responsibilities. *Id.* at 362; *United States v. Ezell*, 6 MJ 307 (CMA 1979); *United States v. Rivera*, 4 MJ 215 (CMA 1978). This expectation applies when the commander is issuing search authorizations; and, likewise, when ordering a suspect into confinement, he must act in a neutral capacity.

In light of the role prescribed for the commander in making confinement decisions, evidence seized in an inventory incident to confinement should not be suppressed solely because a court later determines that confinement was not "required by the circumstances." Applying the exclusionary rule to such evidence will not deter commanders from making such errors or better assure that they have been "neutral and impartial" in their decisions on pretrial confinement. Of course, my logic assumes that the commanding officer, when ordering a suspect into confinement, is not using pretrial confinement as a subterfuge for searching the suspect or otherwise obtaining evidence from him;[2] and nothing in the record here is at odds with this assumption.

Accordingly, I would hold that the evidence received at the accused's trial was admissible, that his conviction should be affirmed, and that he should receive a credit on his sentence for the 69 days spent in pretrial confinement.

COX, Judge (concurring in part and concurring in the result):

Although I could agree with Chief Judge Sullivan that the pretrial confinement was lawful, I also agree with Senior Judge Everett that the Court of Military Review was within its Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c), powers in

---

2. *United States v. Murray*, 12 MJ 139 (CMA 1981); *United States v. Wallace*, 11 MJ 445 (CMA 1981); *United States v. Kalscheuer*, 11 MJ 373 (CMA 1981); *United States v. Cordero*, 11 MJ 210 (CMA 1981).

deciding for itself whether it was appropriate.*

I also agree with Senior Judge Everett that the accused's being ordered into pretrial confinement, even though later determined to be unnecessary by the Court of Military Review, did not create an exclusionary rule for suppression of evidence seized during in-processing. Certainly, the confinement facility personnel, searching the accused in accordance with standard procedures, were entitled to rely in good faith on the legitimacy of the confinement order.

Further, the commander can hardly be accused of bad faith. Operating on the basis of clear probable cause to believe the accused had committed an offense, the commander could just as easily have had him searched incident to the apprehension. Indeed, in my view, the lawfulness of this inventory stood on the same footing as a search incident to apprehension, pretrial confinement being but an extreme form of apprehension. *See* Art. 7(a), UCMJ, 10 USC § 807(a); RCM 302(a)(1), Manual for Courts–Martial, United States, 1984. Whether the search was conducted in an office, in the field, or at the confinement facility makes little difference as far as its legal basis was concerned. The fact that the Court of Military Review found other circumstances militating against prolonged detention does not undermine the authority of the search at the outset of detention.

---

* Thus, the accused is entitled to his 69 days of credit.