OPINION OF THE COURT
MORGAN, Judge:
Appellant was convicted, contrary to his pleas, of one specification of larceny, nine specifications under Article 134, Uniform Code of Military Justice (UCMJ), and one specification of disobedience of a general regulation.[1] He was acquitted of a single specification of rape and another Article 134 specification. Before us he urges, as he did at trial, three errors: 1) four specifications of Charge III (Article 134) should be consolidated by reason of multiplicity; 2) the military judge erred in not giving credit for illegal pretrial confinement; and 3) he was denied a speedy trial. The first of these contentions has merit, and warrants some discussion.
*731 FACTS
The facts which underlie all of the offenses of which appellant stands convicted arise from the Fourth of July holiday weekend of 1993. Appellant, who was then facing the accusation of having raped Senior Airman (SrA) A on March 13, 1993, journeyed to Washington, D.C., with Airman First Class Cameron Simmons, to visit with Simmons’ aunt and uncle. Simmons’ aunt, Sheila Hutchins, was a District of Columbia Metropolitan police lieutenant, and carried as her service weapon a Glock 9 mm handgun. That handgun was equipped with an 18 round magazine, loaded with 17 Federal Hydra-Shok hollow point bullets. In addition, she kept a box of Hydra-Shok cartridges containing 14 more bullets.
Early the morning of July 5, before departing to return to McGuire Air Force Base (AFB), New Jersey, appellant stole the handgun, its holster, the bullets in the magazine, the box of cartridges, and, according to Lt Hutchins, the locked Samsonite briefcase in which all were kept. He took all of this back with him to McGuire AFB. On July 7, appellant bragged about his theft, brandishing the pistol in front of another airman. In short order this was relayed to Simmons, who called his aunt, and the Air Force Office of Special Investigations (AFOSI) was brought into the case. They apprehended appellant at his pick-up truck, and, armed with a search authorization, discovered a sawed-off shotgun, the pistol, the hollow point ammunition, the magazine, and an ornamental samurai sword. The holster was discovered in appellant’s room. The briefcase was never found. At trial, appellant successfully contested the rape charge, but entered into a Bertelson[2] stipulation admitting the key elements of all of the specifications of which he was convicted except for the larceny of the briefcase.
This relatively straightforward sequence of events spawned a veritable cornucopia of charges. Initially, appellant was charged under Article 121 with four separate specifications of larceny — one each for the handgun, the holster, the cartridges, and the briefcase.[3] In addition, under Article 134 the appellant was charged with separate specifications of: 1) taking a stolen handgun across state lines in violation of 18 U.S.C. § 922(i); 2) taking the stolen ammunition across state lines in violation of 18 U.S.C. § 922(i); 3) storing a stolen handgun taken across state lines in violation of 18 U.S.C. § 922(j); 4) storing stolen ammunition taken across state lines in violation of 18 U.S.C. § 922(j); 5) possessing the ammunition in violation of N.J.S.A 2C:39-3(f), New Jersey Criminal Code, as assimilated by 18 U.S.C. § 13; 6) possessing the handgun’s magazine in violation of N.J.S.A 2C:39-9(h), New Jersey Criminal Code, as assimilated by 18 U.S.C. § 13; 7) carrying a concealed weapon (the handgun was found under the seat of his pick-up) in violation of Article 134, UCMJ; and 8) wrongfully transporting a loaded handgun in a motor vehicle in violation of a lawful general regulation.
Appellant’s possession of a sawed-off shotgun in the locked tool box of his pick-up contributed two more specifications: one for possessing it in violation of N.J.S.A 2C:39-3(b) as assimilated by 18 U.S.C. § 13; and another for transporting it in his pick-up in violation of N.J.S.A 2C:39-9(b) as assimilated by 18 U.S.C. § 13.
At trial, appellant moved to dismiss for multiplicity all four of the specifications derived from 18 U.S.C. § 922, arguing them to be multiplicious with the larceny charge. Later, he moved for a finding of multiplicity of these specifications for sentencing purposes.[4] Denying the motion to dismiss, the *732 military judge granted the sentencing multiplicity motion only in part, finding the larceny to be multiplieious with the two specifications alleging storage of the handgun and ammunition, and, as the government conceded in its trial brief, finding the possession and transportation of the sawed-off shotgun to be multiplieious for sentencing purposes only.
MULTIPLICITY: THE SARGASSO SEA OF MILITARY LAW
We hesitate at the outset to add yet another chapter to the bulging tome of analyses which have followed the holding in United States v. Teters, 37 M.J. 370 (C.M.A.1993), cert denied, — U.S.-, 114 S.Ct. 919, 127 L. Ed.2d 213 (1994). See, e.g., United States v. Albrecht, 43 M.J. 65 (1995); United States v. Morrison, 41 M.J. 482 (1995); United States v. Foster, 40 M.J. 140 (C.M.A.1994); United States v. Brownlow, 39 M.J. 484 (C.M.A.1994); United States v. Traxler, 39 M.J. 476 (C.M.A.), cert, denied, — U.S. -, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994); United States v. Weymouth, 40 M.J. 798 (A.F.C.M.R.1994), aff'd, 43 M.J. 125 (1995); United States v. Neblock, 40 M.J. 747 (A.F.C.M.R.1994). But, we are moved to do so in this case if for no reason than to lend substance to our repeated admonition to trial counsel that Teters does not stand for the proposition that, when it comes to charging, more is always better.
The government’s apparent disposition to treat Teters as carte blanche for creative drafting was betrayed in its initial preferral of four separate specifications of larceny, one each for the handgun, the bullets, the holster, and the briefcase, even though all were taken at the same time, same place, and from the same victim. Although this prosecutorial exuberance was reined in modestly by the investigating officer, it galloped unchecked through Article 134, Title 18 of the United States Code, the Assimilative Crimes Act, and the New Jersey code.
Returning to basics, it is manifest that, under the Teters legislative intent analysis, Congress did not intend to separately punish a thief who, having stolen a firearm and moved that firearm across state lines, inevitably also possesses (and hence “stores”) that same firearm. A lucid reading of the different subparagraphs under 18 U.S.C. § 922 reveals the obvious — that Congress intended only to cover the various parties to any criminal transaction involving the interstate transportation of stolen firearms — the thief, the transporter, and the party who knowingly receives the firearms thus transported.[5] It did not mean to punish an individual thrice for having the unhappy lack of foresight to keep his booty to himself.
In this respect, we believe the disposition of this ease to be controlled by Ball v. United States, 470 U.S. 856, 863-64, 105 S.Ct. 1668, 1672-73, 84 L.Ed.2d 740 (1985). In that case, the Supreme Court held that one may not be separately convicted of unlawfully receiving a firearm shipped in interstate commerce (18 U.S.C. § 922(h)) and possession of the same firearm as a convicted felon (18 U.S.C. § 1202(a)(1)). Both sections 1202 and 922, even though separately codified in Title 18, originated with the same legislative enactment, the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, 82 Stat. 228 (1968).
The Ball Court conceded the prosecutorial discretion to charge certain conduct under alternative theories of criminal liability, but cautioned that was “not to say that he may be convicted and punished for two offenses.” The Court continued, “Congress could not have intended to allow two convictions for the same conduct, even if sentenced under only one; Congress does not create criminal offenses having no sentencing component.” Referring back to their Blockburger[6] test of *733 ascertaining congressional intent, the Court reasoned that “[p]roof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon.” Ball, 470 U.S. at 861-62, 105 S.Ct. at 1672 (emphasis in original).
The government has conceded that the ammunition and the handgun should not have been charged separately. United States v. Oliver, 683 F.2d 224 (7th Cir.1982); see also Neblock. But it is clear that Ball stands for the proposition that transportation and storage of the same stolen firearm could not be charged separately either.
To be sure, the introduction of a stolen firearm into interstate commerce is a discrete offense from the stealing of it. It was permissible for the government to charge separately the shipment of the handgun and ammunition in interstate commerce as a separate specification under 18 U.S.C. § 922(i). What was clearly impermissible was to subdivide that single transaction into four. 18 U.S.C. § 922(i) and 18 U.S.C. § 922(i) are hardly “separate and distinct” statutes as the government argued in its trial brief, much less can each of those subparagraphs be further subdivided by charging separately the ammunition and the handgun.
It must be recalled that Teters, like Ball, does no more than to follow the reasoning of Blockburger, which in turn founds its analysis of multiplicity on the protection against Double Jeopardy found in the Fifth Amendment of the Constitution. Ball honors that reasoning, and tells us that the Fifth Amendment will not sustain the separate conviction of specifications 1 through 4 of Charge III. We will make the appropriate correction in our decretal paragraph.
Finally, in this respect, we note that the military judge ruled that the possession and transportation of the sawed-off shotgun, both charged as offenses against New Jersey state law as assimilated, were multiplicious for sentencing purposes. Appellant did not move for a finding of multiplicity for charging purposes of these two specifications at trial, nor does he argue for such on appeal. Accordingly, he waived further review of that issue. United States v. Lloyd, ACM 30846, 1995 WL 538696 (A.F.Ct.Crim.App. Aug. 24, 1995).
ILLEGAL PRETRIAL CONFINEMENT
Appellant further claims that he is entitled to credit for illegal pretrial confinement, arguing that his squadron commander could not first order him into pretrial confinement on July 7, then “review” that order through preparation of a memorandum of probable cause two days later. It is well settled that a military commander may qualify to make the necessary probable cause determination required by Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). See United States v. Rexroat, 38 M.J. 292 (C.M.A.1993), cert, denied, — U.S. -, 114 S.Ct. 1296, 127 L.Ed.2d 648 (1994); United States v. McLeod, 39 M.J. 278 (C.M.A.1994). It is also clear that, if the commander is “neutral and detached,” the commander’s probable-cause determination under Rule for Court Martial (RCM) 305(d) or probable cause review under RCM 305(h) within 48 hours satisfies County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). See United States v. McCants, 39 M.J. 91, 93 (C.M.A.1994). In this case, like Rexroat, the initial apprehension of appellant was effected by the AFOSI, and the decision then to place appellant in pre-trial confinement was made thereafter by the squadron commander. Two days later, the squadron commander confirmed and memorialized that decision consistent with the requirement of R.C.M. 305(h)(2)(C). The same day, a military magistrate reviewed the squadron commander’s determination as required by R.C.M. 305(i) [7] and issued his written report July 11, 1993, two days later.
We cannot agree with appellant’s contention that, merely because the squadron commander was aware of previous nonjudicial punishment actions taken against the appellant, or because he subsequently was the accuser in appellant’s court-martial, he was *734 disqualified from conducting the probable cause determination of R.C.M. 305(d) or the R.C.M. 305(h) review. The military judge did not, therefore, abuse his discretion in ruling adverse to appellant on this issue. United States v. Sharrock, 30 M.J. 1003, 1005 (A.F.C.M.R.1990), rev’d on other grounds, 32 M.J. 326 (C.M.A.1991).
SPEEDY TRIAL
Finally, appellant contends his right to a speedy trial under R.C.M. 707 was violated. He calculates that he was not brought to trial until 134 chargeable days after he was ordered into pretrial confinement, thus violating R.C.M. 707(a)(2). We disagree. The military judge issued painstaking findings of fact in support of his decision to deny the speedy trial claim. His factual determinations with respect to his conclusion are amply supported by the record and are not clearly erroneous. United States v. Maresca, 28 M.J. 328, 333 (C.M.A.1989). Specifically, the military judge did not err in deciding to exclude, for purposes of R.C.M. 707(c), the time excluded by the convening authority for a sanity board, and the delay approved by the investigating officer, pursuant to authority delegated to him by the convening authority, to enable appellant to secure individual military counsel.
HOLDING
Consistent with the discussion of the multiplicity issue above, and the government’s concession, we consolidate specifications 1 and 3 of Charge III, to allege as follows:
Specification 1: In that AIRMAN BASIC JEFFERY S. ROBERSON, 438th Supply Squadron, McGuire Air Force Base, New Jersey, did within the territorial limits of the United States, between on or about 2 July 1993 and on or about 5 July 1993, unlawfully transport in interstate commerce, a stolen firearm and ammunition, specifically a stolen Glock 9mm handgun and 31 rounds of Hydra-Shok 9 mm ammunition, the property of Lt Sheila Hutch-ins, knowing or having reasonable cause to believe that the said firearm and ammunition were stolen, in violation of 18 United States Code, Section 922(i).
As thus modified the specification is approved. Specifications 2 and 4 are dismissed. The remaining findings of guilty are correct in law and in fact, and are approved. Even though the military judge ruled specifications 2 and 4 of Charge III to be multiplicious for sentencing purposes with the specification to Charge II, his failure to hold specifications 1 and 3 of Charge III to be multiplicious, along with our disposition of specifications 1 through 4, inclusive, of Charge III, require us to reassess the sentence. United States v. Deserano, 41 M.J. 678, 682 (A.F.Ct.Crim. App.1995). Reassessing, we decide that the military judge, in consideration of the above approved findings of guilty, would have sentenced appellant to no less than a bad-conduct discharge, confinement for one year and eight months, and forfeiture of $400.00 pay per month for 20 months. We also find, in the light of the full record, allied papers, and post-trial submissions, that the sentence as thus modified is appropriate. United States v. Peoples, 29 M.J. 426 (C.M.A.1990). The findings as modified, and the sentence, as reassessed, are
AFFIRMED.
Senior Judge PEARSON and Judge BECKER concur.

. 10 U.S.C. §§ 921, 934, 892 (1988).

. United States v. Bertelson, 3 M.J. 314 (C.M.A. 1977).

. The Article 32, UCMJ (10 U.S.C. § 832) investigating officer recognized such charging to be expressly prohibited by Manual for Courts-Martial (MCM) United States, Part IV, ¶ 46c(1)(h)(ii) and the larceny specifications were, on his advice, consolidated.

. The trial was conducted before issuance of the U.S. Court of Appeals for the Armed Forces opinion in United States v. Morrison, 41 MJ. 482 (1995). That opinion confirmed the dissolution of the distinction, for purposes of multiplicity, between sentencing and charging, we first announced in United States v. Lenoir, 39 M.J. 751 (A.F.C.M.R.), pet. denied, 40 MJ. 276 (C.M.A. 1994).

. 18 U.S.C. § 922(j) declares it to be unlawful for any person to "receive, conceal, store, barter, seÜ, or dispose of any stolen firearm or stolen ammunition ... [transported across state lines] knowing or having reasonable cause to believe that the firearm or ammunition was stolen.” (Emphasis added.) In common parlance, this is the federal equivalent of a law prohibiting the receiving of stolen property, with the commerce recitation added to supply the necessary constitutional underpinning to a federal enactment of criminal law.

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. Appellant erroneously claims that the RCM 305(i) hearing was not conducted until July 11, 1993. See Appellate Exhibit XII-5.