Charles D. SHORT, Staff Sergeant, U.S. Air Force, Petitioner,

v.

James E. CHAMBERS, Major General, U.S. Air Force, Convening Authority

and

J. Jeremiah Mahoney, Colonel, U.S. Air Force, Military Judge, Respondents.

Misc. Docket No. 91–17.

U.S. Court of Military Appeals.

Argued May 9, 1991.

Decided Sept. 3, 1991.

For Petitioner: *Captain Kevin W. Techau* (argued); *Lieutenant Colonel Charles R. Lucy* (on brief).

For Respondents: *Major Morris D. Davis* (argued); *Lieutenant Colonel Bren-*

*da J. Hollis* and *Captain James C. Sinwell* (on brief).

### Opinion of the Court

COX, Judge:

Petitioner calls upon us to exercise our extraordinary writ powers [All Writs Act, 28 USC § 1651(a)] to direct his release from the Federal Correctional Institution (FCI) at Butner, North Carolina, and to return him to military control.[1] He bases his claim upon lack of authority in the military judge and the convening authority to send him to a federal institution for evaluation of his competence to stand trial by general court-martial for the murder of his wife.

For the reasons stated, we deny his petition for extraordinary relief. In so doing, we hold that RCM 909, Manual for Courts–Martial, United States, 1984, and the pretrial proceedings authorized by Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), afford a military member constitutional safeguards of due process and that the military judge acted within his powers in making the determination that petitioner was not competent to stand trial. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). We further hold that a convening authority can transfer a military member to a Federal Correctional Institution for the purpose of making pretrial determinations of mental competence. *See generally* 18 USC §§ 4241–47.

This case arose from the homicide of petitioner's wife in March of 1988 in the Netherlands. He was convicted of manslaughter by local authorities, but the conviction was overturned on appeal to the Dutch High Court. During these proceedings, petitioner was examined by the Dutch authorities and found to be suffering from a severe mental defect.

Petitioner was returned to the custody of the United States, and the local command began the steps to try him for the murder of his wife. While these preliminaries were underway, petitioner was examined by a sanity board which opined that he lacked the mental capacity to understand the proceedings against him and to participate meaningfully in his own defense. RCM 706. The case was referred to trial in October 1990. During a preliminary session of the court-martial[2], the military judge ruled that petitioner was incompetent and suspended the trial.

Following a search for a facility in which to provide petitioner treatment in an appropriate setting, the Government obtained the approval of the United States Bureau of Prisons (BOP) to have him received at the FCI Butner, for custody and treatment. However, the BOP required that it be assured petitioner had received a due-process hearing pursuant to 18 USC § 4241. *See Vitek v. Jones, supra.* The Government originally proceeded on the theory that an additional hearing was mandated and gave petitioner's counsel notice of its intent to pursue such a course. However, the Government subsequently requested that the military judge simply certify the existing record as sufficient to satisfy the statute and *Vitek.* At a hearing in February 1991, the military judge considered arguments on the subject, concluded that the proceedings to date were sufficient to satisfy due process, and certified the record. Petitioner was then transferred to FCI Butner, where he remains undergoing treatment.

Petitioner advances three arguments to support his contention that he should be released from federal civilian custody. He contends (1) that the military judge has no power to make a judicial determination of incompetence; (2) that the convening authority may not direct that a servicemember be held in a facility of the Bureau of Prisons while in pretrial confinement; and (3) that the proceedings in this case did not

---

1. Petitioner previously invoked our All Writs jurisdiction to prevent his transfer to this institution. We declined to intervene in that transfer. *Short v. Chambers,* 32 MJ 385 (CMA 1991).

2. *See* Art. 39(a), Uniform Code of Military Justice, 10 USC § 839(a).

afford him due process of law. Supervening these matters is the question of whether this Court should exercise its power at all, assuming that petitioner is correct as to any or all of his arguments.

■ Petitioner first argues that a military judge's determination of competence is an advisory opinion only. We reject this argument outright. Article 26, UCMJ, 10 USC § 826, and Article 39(a) clearly grant unto the military judge the power to adjudicate questions of law and facts imperative to the disposition of criminal charges against servicemembers accused of crimes. Whether an accused servicemember is competent to stand trial is such a question. *See United States v. Lilly*, 25 MJ 403, 407 (CMA 1988). RCM 909 provides as follows:

**Rule 909. Capacity of the accused to stand trial by court-martial**

(a) *In general.* No person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against that person or to conduct or cooperate intelligently in the defense of the case.

### Discussion

*See also* RCM 916(k).

(b) *Presumption of capacity.* A person is presumed to have the capacity to stand trial unless the contrary is established.

(c) *Determination at trial.*

(1) *Nature of issue.* The mental capacity of the accused is an interlocutory question of fact.

### Discussion

The military judge rules finally on the mental capacity of the accused. The president of a special court-martial without a military judge rules on the matter subject to objection by any member. *See* RCM 801(e).

(2) *Standard.* Trial may proceed unless it is established by a preponderance of the evidence that the accused is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against the accused or to conduct or cooperate intelligently in the defense of the case.

### Discussion

If the accused is not found to possess sufficient mental capacity to stand trial, the proceedings should be suspended. Depending on the nature and potential duration of the accused's incapacity, the case may be continued or charges withdrawn or dismissed. When appropriate, administrative action may be taken to discharge the accused from the service on grounds of mental disability. Additional mental examinations may be directed at any stage of the proceedings as circumstances may require.

In point of fact, RCM 706(a) comprehensively places the responsibility on almost everyone having contact with a servicemember to safeguard an accused's rights if it should appear that a member is not mentally competent. It provides:

**Rule 706. Inquiry into the mental capacity or mental responsibility of the accused**

(a) *Initial action.* If it appears to any commander who considers the disposition of charges, or to any investigating officer, trial counsel, defense counsel, military judge, or member that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused. The submission may be accompanied by an application for a mental examination under this rule.

Having heard the evidence (in this case offered by petitioner) and applied the law, the military judge concluded that petitioner is incompetent and does suffer from a mental disease requiring treatment. This ruling was not advisory in any sense of the word. RCM 909(c)(1). Thus, it is clear to us that the military judge had both the power and the responsibility to determine whether the accused was competent to stand trial.

Thus, the real question presented is what does the military service do with the incompetent accused? Neither the Uniform Code of Military Justice nor the Manual for Courts–Martial offers a solution. In the instant case the convening authority transferred him to the Federal Correctional Institution, Butner, North Carolina, for follow-up treatment and consultation for the purpose of determining whether he might at some future time become competent to stand trial. It is this transfer which forms the basis for the petition for extraordinary relief.

█ A convening authority has the power to order an accused into pretrial detention in an appropriate facility for the purpose of evaluating the competence of such accused subject to review by the military judge for any abuses of discretion. Art. 13, UCMJ, 10 USC § 813; *cf. United States v. Palmiter*, 20 MJ 90 (CMA 1985). The fact that the appropriate facility is a civilian facility rather than a military one is of no moment so long as the conditions are no more harsh than are necessary to insure petitioner's presence at trial until final resolution of his case and so long as the facility is capable of rendering the competence evaluations and providing care and treatment of the military member. Petitioner has presented no evidence that he is suffering conditions unrelated to this latter objective. Therefore, his confinement at a federal facility, without more, does not warrant our intervention. *United States v. James*, 28 MJ 214 (CMA 1989).

█ We are also convinced that the convening authority could order such examination and treatment of petitioner as sound medical practice dictated. This is especially true as pertains to his competence to stand trial. On other occasions we have held that a servicemember may be ordered to refrain from certain acts to prevent the spread of communicable disease. *United States v. Dumford*, 30 MJ 137 (CMA), *cert. denied*, —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *United States v. Womack*, 29 MJ 88 (CMA 1989). Further, it is well settled that a military member may be commanded to take medication or follow some other course of medical treatment. *United States v. Womack, supra* at 91; *cf. Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). Based upon our review of the record, petitioner's continued confinement in a federal medical facility under treatment is neither an abuse of discretion by the convening authority nor a violation of Article 13; *see* RCM 909(c)(2), Discussion.

█ Lastly, petitioner's reliance on *Vitek v. Jones, supra*, for the proposition that he has not been afforded due process of law, is somewhat askew. It was he who first contended and sought a determination that he was not competent. *See* RCM 909. The United States did not seek to "stigmatize" petitioner by classifying him as "mentally ill." Nevertheless, we agree with petitioner that he is entitled to due process of law before he may be continued in pretrial detention in a medical facility for the purpose of evaluating his competence. *Washington v. Harper* and *Vitek v. Jones*, both *supra*. However, the hearing convened pursuant to Article 39(a) afforded petitioner the required due process. At this hearing he had a presiding military judge, an opportunity to be heard, and legal representation. Further, the military judge specifically found petitioner was on notice that he would be transferred to a mental health facility if he were found to be incompetent to stand trial. We review the military judge's findings of fact to determine if they are supported by substantial evidence of record. *United States v. Maresca*, 28 MJ 328, 333 (CMA 1989); *United States v. Middleton*, 10 MJ 123, 133 (CMA 1981).

The record before us amply supports the military judge's finding. A member of the sanity board which examined petitioner testified that medical care for him should be in a locked unit where medications could be administered under controlled conditions. Defense counsel's argument on the motion concedes that medical care is appropriate and that "treatment then is in the hands of the convening authority...." Therefore, petitioner cannot be heard to complain that he was not on notice that he would be placed in his present situation. The requirements of *Vitek v. Jones, supra,* have been met. *See Washington v. Harper, supra.*[3]

Finally, we find that there has been no usurpation of power in this case. The mili-

tary judge was presented a question within his authority to resolve. RCM 909. His certification of the record was, as the Government argues, a ministerial act. The convening authority has determined that petitioner's confinement is best continued in a civilian facility where he may receive treatment by mental health professionals, a matter within his discretion as a commander. There is no reason for this Court to intervene in this process.

The petition for extraordinary relief is denied.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

**3.** Petitioner also contends that he was not furnished with a written record on which the referral to the Bureau of Prisons would be made. However, at a session of the court-martial following the determination that he was incompetent, the military judge gave counsel notice that he intended to certify the transcript as complying with *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). Counsel had ex-

amined the transcript of the hearing prior to that date. Most importantly, the report of the sanity board, the primary evidence of his mental status, as well as the testimony of one of its members was offered by defense counsel. Petitioner is hard pressed to claim lack of notice at this point. *See also* RCM 909(c)(2), Discussion, Manual for Courts–Martial, United States, 1984.