UNITED STATES

v.

**Charles A. FISHER, 264 79 0845, Sergeant (E–5), U.S. Marine Corps.**

**NMCM 91 2554.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 7 March 1991.

Decided 24 May 1993.

LT L.M. Higdon, JAGC, USNR, Appellate Defense Counsel.

LT Mary L. Livingston, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before FREYER, Senior Judge and WELCH and MOLLISON, JJ.

MOLLISON, Judge:

The principal issue in this appeal from a general court-martial conviction is whether the appellant is entitled to have pretrial confinement credited against his sentence under Rule for Courts–Martial (R.C.M.) 305(k), Manual for Courts–Martial, United States, 1984, in addition to credit otherwise normally allowed under *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). We con-

clude the appellant is not entitled to additional credit and affirm.

*Background.*

Consistent with his pleas of guilty, the appellant was found guilty of three specifications of wrongful distribution of marijuana and one specification of larceny of government property in violation of Articles 112a and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 921. A military judge sitting alone sentenced the appellant to confinement for 30 months, forfeiture of all pay, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the adjudged sentence without modification. The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. The appellant assigns a single error to his court-martial proceedings:

> THE MILITARY JUDGE ERRED IN DENYING APPELLANT R.C.M. 305(K) CREDIT WHERE THE PRETRIAL CONFINEMENT RESULTED FROM A NON–COMPLIANCE WITH R.C.M. 305(H) AND (I).[1]

*Material Facts.*

At a pretrial session the appellant made a motion for appropriate relief in the nature of an order releasing him from pretrial confinement. UCMJ, art. 39(a), 10 U.S.C. § 839(a); R.C.M. 305(j), 906(b)(8). Evidence was adduced on the pretrial confinement process in the appellant's case. *See* R.C.M. 305. This evidence shows that the appellant's commanding officer ordered the appellant's pretrial confinement on 6 November 1990. The confinement order and the commanding officer's memorandum to the Initial Review Officer [hereinafter the "IRO"] state that the appellant was detained on the alleged offense of wrongful distribution of controlled substances. The

---

1. The Court also specified the following issue: DID THE COURT–MARTIAL LACK JURISDICTION TO TRY THE APPELLANT ON THE OFFENSE OF LARCENY BY VIRTUE OF *UNITED STATES EX REL. HIRSHBERG V. COOKE,* 336 U.S. 210 (1949)? COMPARE RECORD AT 77 WITH DEFENSE EXHIBIT C. *SEE GENERALLY UNITED STATES V. CORTTE,* 36 M.J. 767 (N.M.C.M.R.1992). On the basis of post-trial pleadings and filings, we are now satisfied that the trial court had jurisdiction over the larceny offense. *United States v. Clardy,* 13 M.J. 308 (C.M.A.1982).

confinement order reflects that pretrial confinement was deemed necessary because of the seriousness of the offense charged. The commanding officer's memorandum to the IRO also states:

Not only is [the appellant] suspected of wrongful distribution of controlled substances, an excessive amount of government property has been recovered from his place of residence. [The appellant] also knows the identity of his confidential witness and has made threats toward him. These events give me reason to believe that [the appellant] is a flight risk and a threat to commit further misconduct.

Appellate Exhibit VI.

The IRO conducted a hearing on 14 November 1990. The record of that hearing includes a North Carolina search warrant for stolen government property, an inventory of property seized, a police report reflecting two semi-controlled buys of marijuana from the appellant by an informant, the informant's 30 October 1990 sworn statement (name redacted) reflecting the informant had purchased marijuana from the appellant on numerous occasions, including the buys just mentioned, and the appellant's 31 October 1990 confession reflecting two years of marijuana dealing. The IRO's hearing record also contains a handwritten notation of the trial counsel's name followed by "Detainee has knowledge of informant." *Id.* Finally, the IRO's record of hearing reflects the IRO decided to continue appellant's pretrial confinement to ensure the appellant's presence for trial because the appellant is accused of crime for which lengthy confinement may be awarded, the appellant is a flight risk, the appellant has allegedly tried to obstruct justice by threatening witnesses or tampering with evidence, and "it is foreseeable that the alleged and potential acts of the detainee pose a threat to the safety of the community or to the effectiveness, morale, discipline, readiness, or safety of the command." *Id.* These findings were entered by the IRO by checking boxes on a prepared form.

At the evidentiary hearing both the confining commanding officer and the IRO were called to testify. Neither appears to have been a lawyer. The commanding officer testified in substance that he did not confine the appellant immediately after he learned that the appellant had admitted to marijuana distribution. Rather, he did so after the trial counsel reported that the appellant had communicated a threat to a Naval Investigative Service (NIS) protected witness and that there was enough specific information that NIS agents believed it was a credible threat. Based on the seriousness of the offense and the report that the appellant had communicated a threat, the commanding officer believed that the appellant should be in pretrial confinement so that he would not be a risk to himself or someone else, continue to distribute controlled substances, or carry out a threat. Record at 47. Further, the commanding officer testified that he knew the source of the information was a confidential informant, but he had not gone into specifics or the chain of information. He also testified that he had questioned trial counsel about the validity of the witness' and the NIS agent's statements and that trial counsel convinced him that there was substance to the matter. Record at 49–50. There is no evidence the commanding officer spoke with the NIS agents before he made his decision to confine the appellant and the record suggests he did not.

The IRO testified that the trial counsel, as a command representative at the IRO hearing, had indicated that the appellant had knowledge of the confidential witness and had allegedly made threats toward that witness. The IRO based his confinement decision on the possibility of resale of illegal drugs to Marines and others aboard base, the appellant's admission to selling marijuana to an employee of the base exchange, the aforementioned threats, and the possibility of extensive confinement. In sum, he concluded the appellant was a flight risk and posed a threat. Record at 30. At trial the IRO stated he believed the source of the trial counsel's information was the police or NIS, but he was not certain. The IRO also stated he did not

probe the matter of the threats further, question the accuracy of the statement respecting the threats, or know the nature of the threat. He confirmed that the threat was part of the basis for continuing appellant's pretrial confinement. Record at 32. The IRO also stated that corroborating information respecting the alleged threat was not given to him, and he surmised it was not in order to protect the identity of the person threatened. No NIS agent appeared at the IRO hearing.

At trial, however, the investigating NIS agent was called and testified as to the nature and source of the alleged threat. In substance he confirmed that NIS had received information that the appellant had uttered a threat respecting a party who was very likely the person who had informed upon the appellant and that the threat was that the witness would never make it to testify in a court of law. Record at 16. The NIS agent's testimony also revealed that the threat was reported to him by a protected witness who heard it from an unnamed person who heard it from another unnamed person who heard it from the appellant. The NIS agent met personally with his immediate source and surmised the identities of others. He also knew how the party who reputedly overheard the threat was in a position to hear it. The NIS agent declined to disclose the identities of these persons because that would reveal the identity of his protected witness. The NIS agent had no information on the reliability of the intermediate sources, however, the NIS agent testified that much of the information his immediate source had supplied to him proved accurate. For example, the source reported that the appellant was engaged in drug activities, that the appellant had stored stolen government property in a shed in back of his residence, and that the appellant possessed a handgun in his residence. These reports were borne out variously by a search which occurred one day after the appellant was placed in pretrial confinement and by the appellant's pretrial confession. The NIS agent's source, though not present, was also well informed as to the details of an earlier consent search by NIS of appellant's residence during which the appellant successfully steered NIS away from stolen government property.

Despite these corroborating circumstances, the military judge entered essential findings in which he concluded the reliability of the protected witness' information concerning the threat could not be determined. The military judge granted the appellant's motion for appropriate relief and ordered his release. In doing so, the military judge intimated the confining officer and the IRO had abused their discretion by not probing deeper into the source and reliability of the information, but he also concluded the confining officer and the IRO had not acted in bad faith. Record at 53–54, 57–58.

The appellant spent 98 days in pretrial confinement before his release was ordered by the military judge. Record at 87. When the trial resumed more than three weeks later, the appellant moved for an order granting administrative credit for pretrial confinement against sentence in addition to the 98–days credit the appellant would have been entitled to under *Allen*. R.C.M. 305(j)(2), (k); Appellate Exhibit XI. Civilian defense counsel suggested a 3–for–1 credit. Record at 157. In so moving, civilian defense counsel conceded the confining officer and IRO had not abused their discretion, but argued that trial counsel had improperly advised them. Record at 155–57. The military judge entered additional essential findings that the confining officer, IRO, and trial counsel had not acted in bad faith; that there had been no dereliction of duty in the case; that he, the military judge, had based his decision to release the appellant on additional evidence presented at trial; and, that the appellant's pretrial confinement was not illegal. The military judge declined to order credit beyond the 98–day credit the appellant was entitled to in any case under *Allen*. Record at 165. The appellant actually received 98 days of administrative credit against the service of his sentence to confinement. He was paroled 5 May 1992.

*The Parties' Contentions on Appeal.*

Appellant contends that his pretrial confinement was illegal. While he does not claim directly that his commanding confining officer and the IRO abused their discretion, he does claim that they violated procedures by not verifying the reliability of the information presented to them. The appellant, therefore, claims he is entitled to something more than just the credit for legal pretrial confinement under *Allen.* Specifically, he seeks an additional 2–for–1 credit. The Government now appears to concede that there was an abuse of discretion on the part of the IRO and that the military judge erred in not ordering an additional 98–day's credit on that basis. The Government does not oppose an additional 1–for–1 credit (98–days) to be applied against forfeitures in light of appellant's release, but the Government opposes an additional 2–for–1 credit. Thus, we have a tangle of representations, concessions and arguments. Mercifully, we are not limited by either of the parties' arguments or the military judge's essential findings, and we will not "respond in Pavlovian fashion" to the Government's concession. *United States v. Sharrock,* 32 M.J. 326 (C.M.A. 1991); *United States v. Jones,* 34 M.J. 899, 905 (N.M.C.M.R.1992); *United States v. Huffman,* 25 M.J. 758, 760 n. 4 (N.M.C.M.R.1987) (quoting *DeMarco v. United States,* 415 U.S. 449, 451, 94 S.Ct. 1185, 1186, 39 L.Ed.2d 501 (1974) (Rehnquist, J., dissenting)). The issue remains: what credit was the appellant entitled to on this record? We conclude he received that to which he was entitled and is entitled to nothing more.

### Discussion.

There are three types of credit on sentence for pretrial confinement: (1) *Allen* credit, (2) R.C.M. 305(k) credit, and (3) other credits for illegal pretrial confinement. The first two are day-for-day, the third

need not be. The credits are usually cumulative. *See Allen; United States v. Suzuki,* 14 M.J. 491 (C.M.A.1983); R.C.M. 305(k) and Analysis.

### 1. *Allen* Credit?

Under *United States v. Allen,* servicemembers are entitled to have pretrial confinement, whether legally or illegally imposed, administratively credited against their adjudged sentences to confinement on a day-for-day basis. Therefore, under *Allen,* the appellant was entitled to have the 98 days he spent in pretrial confinement prior to his release by the military judge credited against his adjudged sentence to confinement. He received that credit.

### 2. R.C.M. 305(k) Credit? [2]

R.C.M. 305(j)(2) provides that the military judge shall order administrative credit against the adjudged sentence for any pretrial confinement served as a result of two circumstances. The first is where there has been an abuse of discretion. The Rule does not identify whose discretion must be abused to warrant credit. We resolve this ambiguity in the appellant's favor and hold the abuse of discretion by either the accused's commanding officer or the IRO may warrant R.C.M. 305(k) credit. *See Short v. Chambers,* 33 M.J. 49, 52 (C.M.A.1991); *c.f., Sharrock; United States v. Lamb,* 6 M.J. 542 (N.C.M.R.1978).

The exercise of discretion implies conscientious judgment, not arbitrary action. It takes account of the law and the particular circumstances of the case and is directed by reason and conscience to a just result. *Burns v. United States,* 287 U.S. 216, 223, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932) (citations and quotations omitted). "The test for an 'abuse of discretion' is the failure to exercise discretion or its exercise on grounds that are untenable. It does not imply a bad motive or the willful disregard of an accused's rights, but can be the failure to apply the principles of law applicable

---

**2.** The circumstances requiring award of R.C.M. 305 credit appear to exist independently of the circumstances under which the military judge must order the accused's release. *Compare* R.C.M. 305(j)(1) *with* R.C.M. 305(j)(2). Therefore, if either the prisoner's commanding officer

or the IRO abuses his discretion or fails to follow the procedures prescribed in R.C.M. 305(f), (h) and (i), the accused is entitled to R.C.M. 305(k) administrative credit even if the military judge is not required to release the accused under R.C.M. 305(j)(1).

to the situation at hand." *United States v. Hawks*, 19 M.J. 736, 738 (A.F.C.M.R.1984) (citation omitted). Thus, while bad faith or malice is likely to result in an abuse of discretion, discretion may be abused with the best of intentions and the purest of hearts. Therefore, the fact that the commanding officer and IRO acted in good faith is not dispositive of the question whether they abused their discretion.

Under R.C.M. 305, the military judge is also required to give administrative credit against sentence for a failure to comply with the provisions of R.C.M. 305(f), (h), or (i). R.C.M. 305(f) provides for the appointment of military counsel for a prisoner upon his request. R.C.M. 305(h) requires that notification be given to the prisoner's commanding officer that the accused has been confined when the commanding officer is not the one who ordered the prisoner's confinement. It also obliges the commanding officer to decide whether or not the prisoner will remain in pretrial confinement. In making such a determination, the commanding officer must apply criteria, called "requirements for confinement."[3] If the prisoner is to remain in pretrial confinement, the commanding officer must also submit a memorandum to the IRO. The memorandum must state the reasons for the conclusion that the requirements for confinement have been met. The IRO then conducts a review of the prisoner's pretrial confinement. R.C.M. 305(i) sets forth the procedures for the IRO's review.

Among other things, the IRO may afford a command representative the opportunity to appear before the IRO and make a statement. If practicable, the IRO must afford the prisoner and his counsel, if any, the opportunity to appear before the IRO and make a statement. Various time frames are prescribed for accomplishing this process.[4] R.C.M. 305(i) further provides that the Military Rules of Evidence, other than the rules respecting privileges, do not apply and that the standard of proof applicable to the IRO's review is that the "requirements for confinement" must be proved by a preponderance of the evidence. Finally, R.C.M. 305(k) provides how the administrative credit is to be applied by the military judge.

■ Reiterating, the appellant does not contend his commanding officer and the IRO abused their discretion. Rather he claims they failed to follow procedures. Thus, he endeavors to posit his claim on the second of the two bases for obtaining R.C.M. 305(k) credit. The essence of his claim is that as a matter of procedure these officers did not verify the reliability of the information upon which they based their decision. In support of this contention, appellant cites the Discussion to R.C.M. 305(h) which states in part:

> Although the Military Rules of Evidence are not applicable, the commander should judge the reliability of the information

---

**3.** *Requirements for Confinement.* The commander shall direct the prisoner's release from pretrial confinement unless the commander believes upon probable cause, that is, upon reasonable grounds, that:

 (i) An offense triable by a court-martial has been committed;
 (ii) The prisoner committed it; and
 (iii) Confinement is necessary because it is foreseeable that:
 (a) The prisoner will not appear at trial, pretrial hearing, or investigation, or
 (b) The prisoner will engage in serious criminal misconduct; and
 (iv) Less severe forms of restraint are inadequate.
Serious criminal misconduct includes intimidation of witnesses or other obstruction of justice, seriously injuring others, or other offenses which post a serious threat to the safety of the community or to the effectiveness,

morale, discipline, readiness, or safety of the command, or to the national security of the United States. As used in this rule, "national security" means the national defense and foreign relations of the United States and specifically includes: a military or defense advantage over any foreign nation or group of nations; a favorable foreign relations position; or a defense posture capable of successfully resisting hostile or destructive action from within or without, overt or covert. R.C.M. 305(h)(2)(B). *See also* R.C.M. 305(h) Analysis.

**4.** These time frames may have to be accelerated in light of our decision in *United States v. Holloway*, 36 M.J. 1078 (N.M.C.M.R. 3 March 1993) (*en banc*) (applying *County of Riverside v. McLaughlin*, 500 U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)). *McLaughlin* was decided after the appellant's case was tried.

available. Before relying on the reports of others, the commander must have a reasonable belief that the information is believable and has a factual basis. The information may be received orally or in writing. Information need not be received under oath, but an oath may add to its reliability. A commander may examine the prisoner's personnel records, police records, and may consider the recommendations of others.

 We make several observations about the quoted Discussion. Firstly, the Rules for Courts–Martial are promulgated in the Manual for Courts–Martial by the President pursuant to rule-making authority granted to him under the Uniform Code of Military Justice and, as such, are binding upon military courts and personnel. UCMJ, art. 36(a), 10 U.S.C. § 836(a); Exec. Order No. 12473, 3 C.F.R. 201 (1985), as amended; MCM, 1984, Part I, § 4. Supplementary materials have been published to accompany the Manual for Courts–Martial. These supplementary materials consist of "Discussion," "Analysis," and appendices. "Discussion" follows various sections and rules in the Manual. As a supplementary material, a "Discussion" does not constitute a rule, does not represent the views of the Department of Defense or the military departments, and does not create rights or responsibilities that are binding on any person, party or entity. MCM, 1984, Part I, ¶ 4 Discussion. Additionally, a failure to comply with a matter set forth in a "Discussion" does not, of itself, constitute error, although the "Discussion" under a rule may refer to or be based on other sources of authority that are binding. *Id.* Therefore, the Discussion to R.C.M. 305(h) is not a part of R.C.M. 305, itself, and does not constitute a mandate by the President under his UCMJ rule-making authority.

Secondly, to the extent the quoted portion of the Discussion was based upon the *Aguilar–Spinelli* "two-pronged," "basis-of-knowledge"—"reliability" tests for determining probable cause for search warrants under the Fourth Amendment to the Constitution, it, like *Aguilar/Spinelli*, has been superseded by the "totality-of-the-circumstances" test in *Illinois v. Gates*, 462

U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We perceive no intent upon the President's part to require a more rigorous test for commanding officers or IROs when they make their probable cause determinations under R.C.M. 305. Thus, we hold the confining commanding officer and the IRO are obliged to make their probable cause determinations under R.C.M. 305 on the basis of the totality of the circumstances. *Cf. Sharrock*, 32 M.J. 326, 332 (citing *Gates*); UCMJ, art. 9(d), 10 U.S.C. § 809(d). *See also Baker v. McCollan*, 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (standard for magistrate's determination of probable cause for pretrial detention is the same as that for arrest); *Bennett v. City of Grand Prairie, Texas*, 883 F.2d 400 (5th Cir.1989) (a magistrate determines that probable cause to arrest exists from the totality of the circumstances presented to him in the warrant application); *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir.1986) (probable cause for a warrantless arrest exists if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would conclude that the suspect had committed a crime); *United States v. Medina*, 775 F.2d 1398 (11th Cir. 1985) (magistrate properly denied bail on the "totality of the evidence").

 We hasten to add, however, that the process by which probable cause for pretrial confinement is determined may not be transformed into an empty ritual, and commanding officers and IROs may not abdicate their decision-making authority through the "mere ratification of the bare bones conclusions of others." *Cf. Gates*, 462 U.S. at 239, 103 S.Ct. at 2333. *See also Chambers v. Mississippi*, 405 U.S. 1205, 92 S.Ct. 754, 30 L.Ed.2d 773 (1972) (Powell, J., in chambers). Clearly, their determinations must be fair and reliable. *See Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 869, 43 L.Ed.2d 54 (1975); *United States v. Malia*, 6 M.J. 65, 68 (C.M.A.1978). Veracity, reliability, and basis of knowledge are all highly relevant in assessing the value of information upon which they are called to base their probable-cause de-

terminations. *Cf. Gates,* 462 U.S. at 230, 103 S.Ct. at 2628. But they are not "entirely separate and independent requirements to be rigidly exacted in every case," and there is no "rigid demand that specific 'tests' be satisfied by every informant's tip." *Id.* at 230–31, 103 S.Ct. at 2328. Rather, the probable-cause standard is a practical, flexible, nontechnical, common-sense standard. It deals with probabilities: factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. *Id.* at 231, 103 S.Ct. at 2328. While "reliability" and "basis of knowledge" are relevant considerations, under the totality-of-the circumstances analysis "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. at 2329. Borrowing liberally from *Gates,* we conclude the task of the confining commanding officer and IRO is to make a practical, common-sense decision, given all the circumstances set before them, including the veracity and basis of knowledge of persons supplying hearsay information, and this Court's duty is to ensure that they had a substantial basis for concluding probable cause existed. *Id.* at 238–39, 103 S.Ct. at 2332.

Thirdly, we do not characterize the mental process whereby the commanding officer and IRO make their confinement decisions as a procedure. Their assessment of the information before them is the exercise of discretion. If the information upon which their decision is based is insufficient, their decision is untenable and constitutes an abuse of their discretion.

The R.C.M. 305 procedures were followed in the appellant's case. Therefore, despite the appellant's couching the issue as a procedural one, and in spite of his concessions that there was no abuse of discretion, the issue remains whether these officers abused their discretion. If either the confining commanding officer or the IRO (1) failed to exercise discretion, (2) exercised discretion on grounds that are untenable, or (3) failed to apply the principles of law applicable to the situation at hand, he has abused his discretion. Contrarily, if they exercised their discretion, did so on tenable grounds, and applied the correct standards, they did not abuse their discretion. *Hawks.*

■ From the record before us, it appears to us that the confining commanding officer and the IRO did exercise discretion, that they appeared to apply the correct requirements for confinement, and that their decisions were tenable on the basis of the totality of the circumstances. The alleged threat to a witness clearly was of importance, but the reported threat did not come to them in a vacuum. It was one of a number of circumstances presented, including the evidence respecting the appellant's drug dealings and theft of government property. The point of the "totality-of the-circumstances" test is that that information and the alleged threats are not looked at in isolation. True, the commanding officer and IRO might have probed deeper into the source of the alleged threats feature of the equation, but we do not find their conclusions untenable. In fact, the additional information presented at trial by the NIS agent as to that feature, if anything, confirms their decisions. Accordingly, we hold that these officers did not abuse their discretion, that they had a substantial basis for concluding probable cause existed, and that the appellant is not entitled to credit under R.C.M. 305.

### 3. Other Credit?

There is no evidence of record suggesting any other basis for credit against sentence (*e.g.,* illegal pretrial punishment). *E.g.,* UCMJ, art. 13, 10 U.S.C. § 813; *Suzuki.*

### *Conclusion.*

Having found no basis upon which to grant the appellant additional administrative credit against his adjudged sentence, we will not order such credit.

The findings of guilty and sentence as approved on review below are affirmed.

**WELCH, Judge (concurring):**

I concur with Judge Mollison's opinion and write separately to emphasize that the pretrial confinement procedures followed in this case parallel those in federal civilian practice, as was intended by the drafters of the Rules of Court–Martial. *See Analysis,* R.C.M. 305(i), App. 21, Manual for Courts–Martial, United States, 1984, (M.C.M.), A21–17.

The record of trial indicates that hearsay was relied upon by the appellant's commanding officer and the initial review officer because the government desired to protect the identity of a confidential informant. Additionally, both these officers were convinced of the reliability of the informant by representations made by the trial counsel and the NIS agent handling the case, albeit, their inquiry into the basis for this conclusion was abbreviated. Furthermore, I find nothing in the record to indicate that the appellant introduced evidence to refute the allegations made by the trial counsel, or requested that either the judge or magistrate test the veracity of the government's testimony *in camera.* Lastly, and most importantly, the hearsay evidence presented indicated that the appellant made a threat to harm a potential witness against him, and that law enforcement officials attached credibility to the reported threat.

Under these circumstances, the following comments relating to the Bail Reform Act of 1984, 18 U.S.C. § 3142 (the Act), are relevant:

a. "While the Act is silent concerning how the government is to proceed at a detention hearing, the thrust of the legislation is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials.... Section 3142(f) ... provides that a defendant may present 'information' by proffer, and that the rules of evidence governing admissibility of evidence at trial do not apply to the 'presentation and consideration of information' at such hearings.... Accordingly, a government proffer need not always spell out in precise detail how the government will prove its case at trial, nor

specify exactly what sources it will use." *United States v. Martir,* 782 F.2d 1141, 1144–1145 (2nd Cir.1986).

b. The government may have "strong special reasons for keeping its evidentiary sources confidential (*e.g.,* protecting witness safety)." *United States v. Acevedo–Ramos,* 755 F.2d 203, 208 (1st Cir.1985). Even then, the defendant can test the veracity of the government's testimony and the quality of the underlying evidence, by, for example, asking the magistrate to listen to tapes or read documents *in camera. Id.*

c. "In the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved." *Martir, supra,* at 1147.

In my opinion, before both the magistrate and the appellant's commanding officer, the government properly presented a compelling case for pretrial confinement, part of which was based on hearsay evidence that the appellant threatened a witness. Thereafter, the appellant failed to present evidence to refute the inferences raised by the government's evidence, and failed to asked for an *in camera* evaluation of the confidential information available to the government. His failure to launch such an attack tends to justify the decisions to accept the government's representations as accurate. *See United States v. Acevedo–Ramos, supra,* at 209. In my opinion, in the absence of evidence to the contrary, such a statement attributed to an accused who has admitted illegally distributing drugs over an extended period, and who is facing charges that could result in prolonged confinement, must be viewed by reasonable and responsible officials as a serious matter—as it was in this case. Thus, I agree with Judge Mollison that the appellant was not the victim of an abuse of discretion by either his commanding officer or the magistrate.

**FREYER, Senior Judge (dissenting in part):**

I concur in affirming the findings and the sentence, but I agree with the appellate

Government counsel's concession that the appellant is entitled to an additional 98–day credit against the sentence to confinement.

I join fully in Judge Mollison's superb exposition of the law but part company with his abrupt application of that law to the facts of this case. It appears to me that the trial counsel singlehandedly engineered the pretrial confinement of the appellant in this case, and that he did so by expressing his own conclusions in what must have been a very convincing manner made all the more so by failing to reveal the absence of indicia of reliability regarding his information. Both the commanding officer and the initial review officer accepted his information without probing, knowing only that its source was a "confidential witness" via a Naval Investigative Service agent. They were not told that the "confidential witness" was not a witness at all but merely the recipient of a rumor. Many additional details were revealed at the Article 39(a) session, but it is important to bear in mind that neither the commanding officer nor the initial review officer had any of those additional details when he made his respective decision regarding pretrial confinement. Resort to the "totality of the circumstances" cannot be allowed to serve as a "fudge factor" to gloss over deficiencies in information relied on to establish probable cause and the failure of officials responsible for applying the preponderance-of-the-evidence standard to test the reliability of uncorroborated statements made to them by non-witnesses, particularly partisan advocates. This is a case of "boot-strapping" run amok.

Judge Welch's analysis of procedures under the Bail Reform Act and their application in *United States v. Martir*, 782 F.2d 1141 (2nd Cir.1986), has been highly instructive to me, but I find it likewise misapplied to this case. There is, in my mind, a substantial difference between a prosecutor who makes an offer of proof and one who merely acts as a conduit for unsubstantiated information. In making an offer of proof, a prosecutor at least implies that he has had sufficient contact with original sources to ascertain that testimony, documents, and/or objects which, when offered, will be admissible under the rules of evidence are available to prove the facts in issue and will do so. The trial counsel in this case neither made, purported to make, nor was in any position to make such an offer of proof as to the alleged threat.

Secondly, *Martir* emphasizes the detainee's failure to contest the prosecutor's offer of proof at the detention hearing. On this point, the record in our case is unclear. I can find no evidence, as such, from which to infer what kind of presentation the defense may have made at the pretrial confinement hearing, but I note that Appellate Exhibit IV, the motion for release from pretrial confinement signed by both the civilian and military defense counsel, avers in part: "The defense presented testimony that the accused did not present a threat to society, that he had not threatened anyone, and should be granted his freedom."

Puristically, my view has always been that statements in motion papers are not evidence, but it is, regrettably, not at all uncommon in military practice for parties to treat uncontroverted statements in the section of motion papers purporting to be a statement of the facts as establishing—for purposes of the motion only, of course—the uncontroverted facts so stated. Especially in light of the evidentiary latitude granted to the Government on this issue, I am unwilling to disregard altogether this categorical averment made over the signature of a military defense counsel who was present at the pretrial confinement hearing and, therefore, had personal knowledge of the events occurring at the hearing, thereby attributing to him that he knowingly subscribed a false pleading. Accordingly, the second prong of *Martir*, based on the failure of the detainee to contest the prosecutor's offer of proof, has not been demonstrated to my satisfaction.

In my opinion, the Government concession in this case is both sound and commendable.