CRAWFORD, Chief Judge
(concurring in the result):
Because there is a reasonable doubt that a different verdict might result if a trier of fact considers the results of the post-trial Rule for Courts-Martial 706 [hereinafter R.C.M.] inquiry directed by this Court, we should grant Appellant’s petition for a new trial.[1] Rather than grant this well-supported relief, the majority unnecessarily rejects decades of settled practice in this area, applying de novo review to find error. In so doing, the majority gravely confuses the concept of mental capacity with the defense of mental responsibility and changes the obligation on military judges. I cannot join the majority in imposing on military judges such an unwarranted and ill-defined burden.
Administration of justice according to law means administration according to standards, more or less fixed, which individuals may ascertain in advance of controversy and by which all are reasonably assured of receiving like treatment.[2]
Like the majority, I begin my analysis by citing United States v. Carpenter: “The question whether additional psychiatric examination is necessary rests within the discretion of the military judge and is reviewable only for abuse of discretion”.[3] This citation is important in understanding the majority’s position for at least two reasons.
First, the majority’s citation to “abuse of discretion” is curious. Other than noting this legal standard, their analysis is clearly de novo, notwithstanding their later conclusion, bereft of discussion or guidance, that “the military judge abused his discretion by not ordering further inquiry into Appellant’s mental responsibility.”[4] Discussion of abuse of discretion appears nowhere in the majority’s multi-page analysis. Instead, the opinion predicates error on the military judge’s failure to order a second sanity board, given the “nature of the original” board and Colonel (COL) Richmond’s partial departure during his testimony on the merits of the case from the findings of the sanity board he conducted. With good reason, the majority fails to offer any citation of authority to support the conclusion that, in the wake of COL Richmond’s testimony, the evidentiary posture “warranted further inquiry.” I would follow our precedent and determine whether the military judge’s failure to order, sua sponte, an additional inquiry into Appellant’s mental responsibility was “arbitrary, capricious, or unrestrained,”[5] or “arbitrary, fanciful, clearly unreasonable, or clearly erroneous,” or amounted to more than a difference of opinion.[6]
Second, the issue in Carpenter was mental capacity (“competence”) to stand trial.[7] For that reason, its value as an analogue to mental responsibility cases is limited. We would be wise to tread carefully when comparing the duty of a military judge to address and resolve “competence” as a matter of law, with his or her concomitant duties, in a bench trial, as both the trier of fact and source of law, when “responsibility” is an issue.[8] Competence must be resolved as an interlocutory *269 matter of law, while responsibility must be resolved by the finder of law and trier of fact.[9] As the majority correctly notes, if the military judge has reason to question either the mental competence or responsibility of an accused, he or she “may order a mental examination of the accused regardless of any earlier determination by the convening authority,”[10] subject to review for abuse of discretion.[11] If the military judge finds that an accused is not competent, trial may not proceed,[12] and again the military judge’s ruling is tested for abuse of discretion.[13]
In contrast to these legal determinations is the factual determination made by the trier of fact when the defense of lack of mental responsibility is raised. If an accused prevails on the issue of mental responsibility before the trier of fact, the result is a verdict of “not guilty only by reason of lack of mental responsibility.”[14] Such a verdict is then followed by the procedures in R.C.M. 1102A, but is not subject to disapproval by the convening authority,[15] appeal by the United States,[16] or review by either a Court of Criminal Appeals or this Court.[17] Importantly, Article 51(b) and R.C.M. 916(k)(S)(C) require resolution of mental responsibility by the trier of fact and prohibit interlocutory determination of mental responsibility.
Notwithstanding a plainly announced and historically recognized legislative scheme, and without citation of authority or explanation, the majority decrees that “when questions regarding an accused’s mental responsibility are raised during tidal,” the military judge’s responsibility to order additional inquiry “is consistent with the federal approach of addressing questions of competence that arise during trial.”[18] This “consistency” is observed for the sole purpose of importing standards from federal decisions on the question of competence that have no application whatever to questions of mental responsibility. In fact, the majority ignores both Article 36[19] and significant federal ease law emphasizing that the two issues are wholly ineongruent.[20]
In this case, the military judge was not asked by either party to rule on a request for further inquiry into Appellant’s mental responsibility. He was asked to find, as a matter of fact (if he first found Appellant guilty), whether Appellant had proved by clear and convincing evidence that, at the time he committed the offenses of which he was found guilty, he lacked mental responsibility for those acts.[21] This is not to say that the military judge did not retain, for the duration of the proceedings, a responsibility to be alert for anything that might raise a question concerning either Appellant’s competence or responsibility.[22] Because military judges are presumed to know and apply the law, there is no reason to believe that the military judge was not cognizant of this responsibility or that he failed to discharge it accordingly.[23] This principle applies even *270 when the reasoning of the military judge is not plain on the record.[24]
Two issues are not before us: (1) whether the evidence is sufficient as a matter of law to support the military judge’s determination that Appellant’s lack of mental responsibility was not proved by clear and convincing evidence; and (2) whether we, with the clarity of hindsight and the assurance of an additional sanity board, would have done things differently, had we been the military judge. After reviewing the military judge’s actions solely for abuse of discretion, I conclude that he did not err.
A. Competence vs. Responsibility.
No evidence at trial placed in question the competence of Appellant to stand trial, nor was that issue raised by the defense under R.C.M. 909, or by any other party. What was litigated at trial was the mental responsibility of Appellant at the time of the offenses. Any reference by the majority to mental competence or capacity is inapposite and may unintentionally suggest to military judges that there is a factually and legally valid analytical connection between the two. For this reason, I must specifically dissent from the majority’s conclusions.
B. Defense of Lack of Mental Responsibility.
There is no indication that the military judge had an opportunity to examine the report of the R.C.M. 706 inquiry until it was offered into evidence by the defense during the defense case, nor did either party contend that the report was insufficient, that the inquiry was improper, or that COL Richmond was unqualified. Nonetheless, the military judge was aware that the defense would place the accused’s mental responsibility in issue. Far from being uninvolved, the military judge during trial on the merits, after explaining in open court the purpose for his inquiry, questioned COL Guthrie, Majors O’Dell and Harris, and Specialist Austin (all witnesses for the prosecution) on matters pertinent to Appellant’s mental responsibility. Counsel frequently had additional questions of these witnesses after inquiry from the bench. In addition, the military judge briefly questioned Appellant regarding his duty status and state of mind. Appellant’s testimony was lucid, consistent, and characteristic of those who elect to testify in support of their lack of mental responsibility.
During cross examination of COL Richmond, the defense expert on this issue, COL Richmond gave an answer that appeared to conflict with his findings while acting as a one-member “sanity board,” pursuant to R.C.M. 706. As the defense witness request for COL Richmond does not contain the synopsis required by R.C.M. 703, we have no way of knowing whether COL Richmond’s testimony at trial was a surprise to the defense, much less to the government. If either was surprised, he hid it well, making very little additional inquiry into the area. Assuming, arguendo, that COL Richmond’s momentary departure from the R.C.M. 706 report was unexpected, the remainder of his testimony (as quoted by the majority) is sufficiently equivocal to significantly reduce the weight of his “I don’t believe he did,” comment. Even so, COL Richmond’s, “I don’t believe he did” answer contributed to and directly supported Appellant’s lack of mental responsibility defense. The defense counsel, who likely knew far more about his client’s mental state than did any other party to the trial, did not object when COL Richmond changed his testimony. At that point, with virtually no other evidence to carry the defense’s burden to prove clearly and convincingly Appellant’s lack of mental responsibility, the defense counsel may well have welcomed assistance from this perhaps unexpected quarter.
As we strongly advised in United States v. Quintanilla,[25]
[t]he Manual also emphasizes the importance of an impartial judiciary, advising military judges that when carrying out their duties in a court-martial, they “must avoid undue interference with the parties’ *271 presentations or the appearance of partiality.” ROM 801(a)(3) (Discussion). The military judge must exert his authority with care, so as not to give even the appearance of bias for or against either party.
If, as the majority insists was required of him, the military judge had intervened and, over defense objection,[26] directed a second sanity board, on appeal we would be evaluating two far more deserving issues: (1) did the military judge abuse his discretion in ordering an additional sanity inquiry?; and (2) did the military judge depart his impartial role when, immediately following testimony favorable to the primary defense raised by Appellant, he sua sponte stopped the proceedings to seek expert impeachment of that testimony?
C. Responsibility of the Military Judge. Neither counsel commented on, contradicted, or argued COL Richmond’s seemingly anomalous interjection. No party to the proceedings suggested or requested any additional inquiry into the mental responsibility of Appellant. The report of the R.C.M. 706 board, though not a model inquiry, is regular on its face and no question was raised at trial regarding COL Richmond’s qualifications or the procedures he employed. Tellingly, the record of trial contains no reference to any standard that COL Richmond failed to meet.
Nonetheless, the majority finds that the military judge erred, and in so doing, “puts trial judges in a unique ‘box.’ Military judges now must assume the role we have always left to competent counsel” to present evidence in support of affirmative defenses.[27] Are military judges now required to ask presumably competent counsel on the record if they are challenging the validity of a facially valid R.C.M. 706 report? Are military judges now required seek an advance copy of the report, examine it and inquire into its basis, assess the qualifications of those producing the report, and sua sponte determine whether the report is sufficient? Just as importantly, are military judges now required to provide another “bite at the apple” to the government in any case in which an expert witness for the defense unexpectedly testifies in support of an accused’s lack of mental responsibility?
In deciding, without having seen any witness testify and, in particular, without having evaluated Appellant’s in-court demeanor on and off the stand, “we believe the military judge should have done something more in this case,”[28] the majority now requires not only that military judges meet the qualifications of Article 26,[29] but that they possess a measure of clairvoyance that should not reasonably be required of any human. Given the choice between this course of action and granting Appellant a new trial pursuant to R.C.M. 1210, I have no difficulty deciding that the latter path is the more prudent and correct.

. United States v. Breese, 47 M.J. 5 (C.A.A.F.1997).

. Roscoe Pound, Justice According to Law, 13 Colum. L.Rev. 696, 705 (1913).

. 37 M.J. 291, 298 (C.M.A.1993)(emphasis added).

. 60 M.J. at 267.

. United States v. Frye, 8 C.M.A. 137, 141, 23 C.M.R. 361, 365 (1957)(Latimer, J., concurring in the result).

. United States v. Miller, 46 M.J. 63, 65 (C.A.A.F.1997)(citing United States v. Travers, 25 M.J. 61, 62 (C.M.A.1987)).

. Like the majority, I note that these terms are used interchangeably.

. See Arts. 50a and 51(d), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 850a and 851(d)(2000).

. Compare R.C.M. 909(d)-(e) with R.C.M. 921(c)(4).

. R.C.M. 706(b)(2).

. United States v. Frederick, 3 M.J. 230 (C.M.A.1977).

. R.C.M. 909(e)(2); Short v. Chambers, 33 M.J. 49, 51 (C.M.A.1991).

. United States v. Proctor, 37 M.J. 330, 336 (C.M.A.1993).

. Art. 50a(c)(3), UCMJ, 10 U.S.C. § 850a(c)(3) (2000); R.C.M. 921(c)(4).

. R.C.M. 1107(b)(4).

. Art. 62, UCMJ, 10 U.S.C. § 862 (2000).

. Arts. 66, 67, UCMJ, 10 U.S.C. §§ 866, 867 (2000).

. 60 M.J. at 267 (emphasis added).

. UCMJ, 10 U.S.C. § 836 (2000).

. See, e.g., United States v. Bartlett, 856 F.2d 1071 (8th Cir.1988); United States v. Hollis, 569 F.2d 199 (3d Cir.1977); United States v. Mercado, 469 F.2d 1148 (2d Cir.1972); United States v. Taylor, 437 F.2d 371 (4th Cir.1971); Floyd v. United States, 365 F.2d 368 (5th Cir.1966); United States v. Westerhausen, 283 F.2d 844 (7th Cir.1960).

. See generally R.C.M. 921(c)(4).

. R.C.M. 916(k)(3)(B); Frederick, 3 M.J. at 232-33.

. United States v. Prevatte, 40 M.J. 396, 398 (C.M.A.1994).

. United States v. Vangelisti, 30 M.J. 234 (C.M.A.1990).

. 56 M.J. 37, 43 (C.A.A.F.2001)(footnote omitted).

. Not a mere whimsy, given Appellant's expressed belief that the Army was using mental status inquiries to deny him due process. Appellant testified that he resisted additional mental evaluation because he thought it was being used to deny him his day in court, and that some of the acts with which he was charged were undertaken for the purpose of getting him to a court-martial.

. United States v. Wiesen, 57 M.J. 48, 55 (C.A.A.F.2002)(Crawford, C.J., dissenting).

. 60 M.J. at 267. In support of this conclusion, the majority relies on United States v. Bray, 49 M.J. 300 (C.A.A.F.1998), a case in which the military judge was required by R.C.M. 910(e) and United States v. Jemmings, 1 M.J. 414 (C.M.A.1976) to advise the accused of the defense of mental responsibility because that defense was raised during sentencing following a guilty plea. By concluding that the military judge should have done something more in this case as well, the majority enigmatically hints that henceforth, in contested cases, the military judge would be wise to advise the accused of a potential defense whenever he believes it has been raised by the evidence, during any part of the proceedings.

. UCMJ, 10 U.S.C. § 826 (2000).